465 P.2d 1007

**WASATCH MINES COMPANY, a Utah Corporation, Plaintiff, Respondent, and Cross-Appellant,**

v.

**William HOPKINSON, Defendant, Appellant, and Cross-Respondent.**

No. 11599.

Supreme Court of Utah.

Feb. 26, 1970.

David A. Goodwill, Salt Lake City, David H. Day, Murray, for plaintiff, respondent, and cross-appellant.

Richard R. Neslen, and Robert G. Pruitt, Jr., of Neslen & Mock, Salt Lake City, for defendant, appellant, and cross-respondent.

CALLISTER, Justice.

Plaintiff corporation (hereinafter referred to as Wasatch) initiated this action to recover the unpaid balance on the purchase price of 1600 tons of soil removed from plaintiff's property by defendant during the latter part of 1958. Defendant asserted in the alternative that the plaintiff's claim was barred by the statute of limitations or that according to the terms of his oral agreement with plaintiff, defendant agreed to pay for the soil only as he sold it.

Defendant filed a counterclaim, wherein he pleaded that by force of certain agreements between the parties he had the privilege of removing soil in the area of certain mining claims of Wasatch for the term of 25 years and that Wasatch had repudiated such agreement to the damage of defendant. Defendant prayed for damages and confirmation of his agreement to remove soil.

Upon a trial before the court, it dismissed Wasatch's claim by virtue of the fact that the evidence presented clearly indicated that defendant had agreed to pay for the soil as he sold it, and further, that the claim of Wasatch was barred by the statute of limitations. The court dismissed defendant's counterclaim by virtue of the fact that the terms of the purported contract were so vague and uncertain as to render the contract unenforceable, and, further, that the damages claimed by defendant were so speculative that the court would be unable to determine any damages.

On appeal, defendant asks this court to construe certain documents in evidence as

a grant of an incorporeal hereditament, specifically, a profit a prendre, to defendant for a term of years, and to affirm the judgment of the trial court in regard to the claim of Wasatch. The latter cross-appeals and contends that the trial court erred in both of its rulings, namely, that defendant was not required to pay for the soil until it had been actually sold and that its claim was barred by the statute of limitations. However, it asserts the dismissal of the counterclaim should be affirmed.

Wasatch is the owner of certain patented lode mining claims. Several of the officers and directors of Wasatch formed a new corporation, Alta Wasatch Development Company, to develop the mineral interests on one of its claims. Defendant was a director of Alta and became a majority shareholder in that corporation.

Defendant asserts that he entered into a written agreement with both corporations, about September, 1954; no one has been able to locate this document after a diligent search. This agreement allegedly gave defendant the privilege to remove soil from the boundaries around a drain tunnel for a term of two years at the price of $6 a ton. On February 9, 1956, Alta and Wasatch executed another agreement, wherein it was recited that it was an instrument to amend a lease to Alta Wasatch Development Company. This agreement provided that H. W. Hopkinson & Sons were to be sole distributors of soil in the deposit described in the lease and were to pay $6 per ton F.O.B. mine site. Alta was to receive $4 and Wasatch $2 as their respective shares. This amendment recited that it was for 25 years with an option to renew on the same basis. The agreement prohibited a sale or transfer without the permission of the boards of directors of both Alta and Wasatch. The document provided that in case of the death of H. W. Hopkinson, his sons can accept or reject the lease and amendment. The instrument further recited that it amended the boundaries of the lease, and included all soil in the area removable without damage to buildings or installations on the property or interference with mine dumpings by any operating company. Defendant recorded this agreement on August 17, 1962. There is nothing in the record to indicate that this document was ever acknowledged so as to be entitled to recordation as a conveyance under Section 57–3–1, U.C.A., 1953.

The next document presented by defendant was dated February 11, 1959, and was entitled an amendment to an agency agreement between Alta Wasatch Development and Wm. H. Hopkinson, dba Wm. H. Hopkinson & Sons. This instrument provided that the original agreement providing for the payment of $6 per ton for soil located on the property of Wasatch and under lease to Alta Wasatch Development Company was changed to reduce the original price by 20 per cent to provide for the moisture content in the soil. The agreement further

stipulated that Hopkinson could enter upon the property at any reasonable time for the removal of soil provided that he didn't interfere with the mining operations of other lessees of Wasatch Mines Company. This document was signed solely by Alta.

The last document upon which defendant relied was entitled an amendment to lease, was undated but recited that its effective date was March 1, 1959. This agreement identified Alta and Wasatch as lessors, and Wm. Hopkinson & Sons as lessees and recited that it was an amendment to a lease now in operation between the parties pertaining to the payment for soil to be removed by the lessees from the mining property of the lessors situated in Little Cottonwood Canyon, "and particularly known as the surface ground immediately surrounding the entrance to the Wasatch Drain Tunnel." The agreement recited that the original price of $6 per ton was reduced to $4.80 and that the net proceeds of $4.80 per ton were to be divided among Alta, Wasatch, and Hopkinson, each to receive $1.60 per ton. The document further provided that any rights accruing to Hopkinson in the settlement of the proceeds were to be considered a personal matter among all parties concerned and were not transferable. The document was signed by Alta and Wasatch and defendant testified that he also signed it, although his signature does not appear upon the copy in evidence.

Wasatch introduced into evidence an agreement which it proffered to defendant in September of 1956, providing for defendant to recover topsoil for selling and distribution. Defendant refused to sign this agreement because of a provision requiring him to sell and distribute a minimum of 50 carloads of topsoil before January 1, 1957. Defendant asserted that the soil he removed in October, 1958, was pursuant to a separate oral agreement and was a distinct transaction from others that he had conducted pursuant to the written agreements.

In April of 1963, both Alta and Wasatch held meetings of their boards of directors for the purpose of formulating some kind of working relationship with defendant and to determine the matter of payment for 1600 tons of topsoil defendant had removed to a stockpile. These meetings were held consecutively, Alta first, Wasatch second. Defendant asserted that he attended only the Wasatch meeting; other witness contradicted him. The minutes of the Alta meeting recited that the lease agreement of March 15, 1953, between Wasatch and Alta had expired and was formally terminated; that the lease agreement of February 9, 1956, between Wasatch and Alta, which designated Hopkinson & Sons as distributors of the soil, was no longer in operation and was in default by Hopkinson's removal of 1600 tons of soil and his failure to pay therefor; the agreement was declared terminated. The minutes of the Wasatch

meeting recited that the purpose of the meeting was to consider a proposition of Hopkinson concerning his desire to obtain a contract to remove soil in the vicinity of the Wasatch Drain Tunnel. The board agreed to meet with him again to consider any proposition he might formulate.

The Wasatch board met with defendant and his counsel on September 23, 1963; defendant claimed that he had a lease to take soil from all of the claims of Wasatch, which according to the latter's former counsel included many claims to which it did not own the surface rights. At this meeting, defendant agreed to procure a map and designate the areas from which he proposed to remove soil and to obtain clearances from the Forest Service and the Board of Health.

Defendant received a letter from Wasatch dated August 31, 1964, wherein it directed him not to remove any more soil until he had paid for the 1600 tons already removed and until he met with its board and completed proposals made by his counsel in August of 1963.

Based on the foregoing evidence and written documents submitted, the trial court concluded the agreements between the parties were so vague and uncertain that the court was unable to interpret them.

On appeal, defendant asserts that he has a definite and enforceable right to the soil on the land, a profit a prendre, on all 78 claims of 20 acres each, owned by Wasatch in Little Cottonwood Canyon.

▮▮▮ A privilege plus a profit is generally characterized by the authorities as a profit a prendre.[1] A profit a prendre is an interest in land.[2] Since the creation of a profit a prendre involves a transfer of an interest in land, the better view seems to be that it must be by deed.[3]

May the documents in evidence be construed as a conveyance of an interest in land?

▮▮▮ A careful survey of the documents does not reveal a present intention to convey an interest in real property to defendant. The agreements appear to be an arrangement between two corporations, Wasatch as lessor and Alta as lessee, with a mutual agreement between them that defendant may act as the marketing agent for distribution of the soil. The designation of defendant as a distributor is a clear indication that it was not the intention of the parties that he was to be the grantee of an incorporeal interest in the realty.[4]

1. Deseret Livestock Co. v. Sharp, 123 Utah 353, 358, 259 P.2d 607 (1953).
2. Haynes v. Hunt, 96 Utah 348, 354, 85 P.2d 861 (1939).
3. 1 Thompson on Real Property (1964 Rpt. Vol.), Sec. 140, p. 527.

4. See 13 Words and Phrases, 1969 Pocket Supp. 3: "Distributor" means one who or that distributes; a distributor, or an agent or agency for marketing, usually in a particular territory, manufactured goods, or other commodities.

The documents do not give a sufficient description of the property to determine the boundaries of the area which the alleged grantee may enter and remove soil. The 1956 agreement indicates "all soil in the area" which defendant asserts granted him an interest in the 78 claims of 20 acres each, owned by Wasatch. However, the document recited that it was to amend a lease between Wasatch and Alta, and there was no evidence presented to indicate the claims upon which Alta had a lease. The 1959 document does designate defendant as a lessee, but describes the boundaries "as the surface ground immediately surrounding the entrance to the Wasatch Drain Tunnel."

From the foregoing, we are compelled to conclude that the judgment of the trial court on defendant's counterclaim must be affirmed, since the documents do not identify the grantor, the grantee, the interest granted, or a description of the boundaries in a manner sufficient to construe the instruments as a conveyance of an interest in land.

Plaintiff in its cross-appeal asserts that the trial court erred by its dismissal of plaintiff's claim on the ground that it was barred by the statute of limitations. De-

fendant pleaded the statute of limitations generally without designating the sections of the statute or statutes upon which he relied.

Rule 9(h), U.R.C.P., provides:

In pleading the statute of limitations it is not necessary to state the facts showing the defense but it may be alleged generally that the cause of action is barred by the provisions of the statute relied on, referring to or describing such statute specifically and definitely by section number, subsection designation if any, or otherwise designating the provision relied upon sufficiently clear to identify it. If such allegation is controverted, the party pleading the statute must establish, on the trial, the facts showing that the cause of action is so barred.

Defendant's general plea of the statute of limitations was not in accordance with Rule 9(h), U.R.C.P.; this inadequate plea will, therefore, not be considered pertinent on this appeal.[5]

Finally, plaintiff contends that the trial court erred in its finding that defendant agreed to pay for the soil as he

---

5. See Westerfield v. Coop, 6 Utah 2d 262, 263, 311 P.2d 387 (1957). It should be further observed that there is no similar federal rule to Rule 9(h), which substantially incorporates former section 104-13-7, U.C.A.1943. It has been uniformly held as the law of this state that the applicable section of the statute of limitations must be specifically pleaded. American Theatre Co. v. Glasmann, 95 Utah 303, 306, 80 P.2d 922 (1938); Nelden-Judson Drug Co. v. Commercial National Bank of Ogden, 27 Utah 59, 63, 74 P. 195 (1903); Spanish Fork City v. Hopper, 7 Utah 235, 238, 26 P. 293 (1891).

sold it. There was sufficient evidence to support this determination; however, there was further evidence that it was within the contemplation of the parties that the soil would be sold in a reasonable time after it was removed from plaintiff's property in the autumn of 1958. There was undisputed testimony that the stockpiling arrangement was for defendant's convenience during the winter season of 1959; during this interim the sale was contemplated. Therefore, the debt became due after the lapse of this period of time.[6] Since the trial court, as a fact finder, accepted defendant's version that the soil was removed under a separate oral agreement, this case must be reversed and remanded to determine the agreed price (whether the $1.60 rebate to defendant was applicable) and the unpaid balance.

Costs are awarded to plaintiff.

TUCKETT, HENRIOD and ELLETT, JJ., concur.

CROCKETT, Chief Justice (dissenting).

I am in accord with that part of the main opinion which affirms the trial court's denial of the defendant's counterclaim due to the vague and uncertain character of the evidence purporting to show a conveyance of an interest in land to the defendant. But I am compelled to disagree with that portion of the opinion which reverses the lower court and permits the plaintiff to recover on an eleven-year-old contract concerning the removal of soil for the purposes of commercial sale.

There is a dilemma which must be confronted and dealt with here: either (1) the soil was removed under what was in effect an agreement of consignment to the defendant Hopkinson under which it was to be paid for if, when and as it was sold; or, (2) it was sold outright to defendant Hopkinson and he became obliged to pay for it as he took it, or within a reasonable time thereafter. The findings and judgment of the trial court effectively preclude plaintiff from recovery under either alternative. In his signed memorandum decision he stated:

The Court is of the opinion that the testimony clearly shows, as does the practice, [1] that the defendant agreed to pay for the soil as he sold it, and further [2] that the Statute of Limitations would bar any claim the plaintiff might have.

And this is also included in the findings.

---

6. This finding is implicit in the trial court's determination that the claim was barred by the statue of limitations, since a cause of action for a debt begins to run when the debt is due and payable. If the statute of limitations had been pleaded in accordance with Rule 9(h), U.R. C.P., it would have constituted a bar to plaintiff's claim.

From the first horn of the dilemma I can see no proper escape. The evidence justifies the trial court's finding that the defendant had only "agreed to pay for the soil *as he sold it.*" This is simply a consignment arrangement. It does not pass title to the defendant, nor does any right to payment for the soil accrue to the plaintiff until the sale is made. This agreement of the parties as found by the trial court should be adhered to.

As to the other horn of the dilemma: if by some rationalization it could be concluded that the finding as to the consignment arrangement was in error, and that the defendant had agreed to pay for the soil absolutely and without contingency, the further determination of the trial court that "any claim the plaintiff *might* have" was barred by the statute of limitations should still prevent the plaintiff from recovering.

In that connection the plaintiff's own contention, and the only evidence relating thereto, was that the soil was to be stored for the winter of 1958–1959 and was to be sold during that summer. If that view be taken, the purchase price would have been due and payable in the summer, or at the latest by the fall, of 1959, and the commencement of this action in December of 1967 would be long after any possible statute of limitations Section 78–12–1 et seq. U.C.A.1953, as ruled by the trial court.

In regard to the question of the pleading of the statute of limitations something further should be said. Inasmuch as the trial court adopted the view that the defendant had the soil .on consignment, and was not required to pay the plaintiff until the soil was sold, it was not necessary for the matter of the application of the statute of limitations to be brought into focus. This is true even though the defendant pleaded the statute, and the trial court made what impresses me as a safeguard finding thereon. If the trial court had found or expressed an intention to find, that the defendant owed the plaintiff for the soil, then the question of the statute of limitations could have, and undoubtedly would have, been given more specific attention. Nevertheless, in my judgment, upon the state of this record, under the particular facts of this case, the determination by the trial court that "any claim the plaintiff *might* have" is barred by the statute of limitations should be sustained.

The purpose of the reform in the adoption in 1951 of what we still call our *new* Utah Rules of Civil Procedure was to minimize technicalities to make it easier to get at the truth and do justice. The most fundamental of these new rules, which underlies and should condition them all, is the statement of their purpose in Rule No. 1:

They shall be liberally construed to secure the just, speedy, and inexpensive determination of every action.

To the same effect and specifically about pleadings is Rule 8(f):

> All pleadings shall be so construed as to do substantial justice.

It is submitted that if the rules are applied in this case in accordance with their proper intent of getting to substantial justice, the defendant's pleading of the statute of limitations was sufficient; and more important, the determination of that issue by the trial court conformed to the literal mandate of Rule 54(c) (1) which provides:

> Every final judgment *shall grant the relief to which the party* * * * *is entitled,* even if the party has not demanded such relief in his pleadings. * *

The trial court here acted in conformity with the rules just quoted. I see nothing in Rule 9(h) which could properly be considered as preventing him from doing so in this case.

What the plaintiff was entitled to was to be informed in clear and understandable language the issue raised and the defense relied upon. See Taylor v. Royle Corp., 1 Utah 2d 175, 264 P.2d 279; Kirkham v. Spencer, 3 Utah 2d 399, 285 P.2d 127. This it had in the answer which set forth expressly as an affirmative defense that the claim "is barred by the statute of limitations."

It is my opinion that the findings of the trial court should be sustained on both issues: that under the agreement of the parties the defendant owes no money to the plaintiff except as the soil is sold; and that if it should be determined otherwise, the plaintiff's claim would be barred by the statute of limitations; and further, that these parties, who had such a loose arrangement between themselves, which they had let lie asleep so long, should not be disturbed from their slumbers; and neither of them should have judgment against the other. (All emphasis added.)