ROCKY MOUNTAIN ENERGY,
Petitioner,

v.

UTAH STATE TAX COMMISSION,
Respondent.

No. 910105.

Supreme Court of Utah.

April 28, 1993.

Robert A. Peterson, Salt Lake City, for petitioner.

R. Paul Van Dam, Atty. Gen., Brian L. Tarbet, Asst. Atty. Gen., Salt Lake City, for respondent.

HOWE, Associate Chief Justice:

Rocky Mountain Energy Company ("RME") seeks review of an order of the Utah State Tax Commission imposing sales tax on RME's sale of slag material to L.A. Young and Sons Construction Company.

## FACTS

RME processes and sells slag (a waste product of the copper smelting process) that it extracts from a slag pile leased from

Kennecott Copper Corporation in Magna, Utah. RME usually loads and transports the slag to facilities where it is crushed and made suitable for use as railroad ballast or as fill material in highway construction. RME agreed to provide L.A. Young with slag to be used in a highway construction project L.A. Young had undertaken for the Utah Department of Transportation ("UDOT"). RME offered L.A. Young two alternatives: (1) RME would rip, doze, and load the slag at a fixed price, or (2) L.A. Young could rip, doze, and load the material and pay RME sixty cents per ton. L.A. Young chose the second option.

The agreement between RME and L.A. Young was not memorialized in a writing. They simply agreed orally that L.A. Young could remove slag from the pile at a designated point. In addition, RME insisted that L.A. Young make arrangements with UDOT to enable RME to receive payment for the slag from UDOT rather than from L.A. Young. All three parties accepted this manner of payment. As a result, throughout the life of the project UDOT issued checks payable to both L.A. Young and RME, as co-payee. UDOT gave the checks to L.A. Young, which endorsed them and then delivered them to RME as payment for the fill material purchased.

The Auditing Division of the Utah State Tax Commission issued a deficiency in sales tax due to RME's failure to collect and report taxes on sales to L.A. Young. RME appealed to the Commission, contesting the assessment. At an informal hearing, the Commission concluded that the sales tax was properly assessed. RME then sought a formal hearing; however, prior to the formal hearing, RME requested that the matter be disposed of by way of RME's motion for summary judgment.

The Commission affirmed the Auditing Division's assessment and denied RME's motion for summary judgment. The Commission determined that the sale of slag to L.A. Young was the sale of tangible personal property. The Commission found that "no evidence [was] presented by RME that would substantiate RME's claim that the parties to the contract intended the purchase agreement to constitute the sale of an interest in land rather than the sale of tangible personal property." In addition, the Commission concluded that the fact that RME was named as a co-payee on the UDOT warrant did not mean that the slag was sold to UDOT, an agency of the State of Utah, and that the sale was therefore exempt from taxation under Utah Code Ann. § 59–12–104(2).

## STANDARD OF REVIEW

■ In reviewing the Commission's interpretations of general questions of law, this court applies a correction-of-error standard, giving no deference to the agency's interpretation of the law. *Chris & Dicks Lumber & Hardware v. Tax Comm'n*, 791 P.2d 511 (Utah 1990); *Hurley v. Board of Review of Indus. Comm'n*, 767 P.2d 524 (Utah 1988); *Utah Dep't of Admin. Servs. v. Public Serv. Comm'n*, 658 P.2d 601 (Utah 1983).[1]

## SALE OF TANGIBLE PERSONAL PROPERTY

We first address whether the Commission erred in determining that the sale of slag to L.A. Young was a sale of "tangible personal property" as defined by Utah Code Ann. § 59–12–102(13)(a)(iv). Utah law imposes a tax on retail sales of tangible personal property. Utah Code Ann. § 59–12–103(1)(a) ("There is levied a tax on the purchaser for the amount paid or charged for ... retail sales of tangible personal property made within the state."). According to section 59–12–102(13),

(a) "Tangible personal property" means:

. . . .

(iv) all other physically existing articles or things, including property severed from real estate.

(b) "Tangible personal property" does not include:

---

**1.** Because the proceedings began before January 1, 1988, the Utah Administrative Procedures Act ("UAPA"), Utah Code Ann. §§ 63–46b–1 to –22, does not govern the standard of review.

(i) real estate or any interest or improvements in real estate.

RME characterizes its agreement with L.A. Young as a transfer of an interest in real estate and therefore not taxable under section 59–12–102(13)(b)(i). It argues that L.A. Young was given the right to enter upon its leasehold and extract slag, paying a royalty of sixty cents per ton. However, RME was not able to provide the Commission with a copy of any agreement between RME and L.A. Young that would indicate the transfer of a real property right. RME concedes that the agreement "was more or less just an understanding." It asserts that although there was no formal instrument of conveyance, whether there was a transfer of an interest in land depends on the underlying arrangement of the transaction without regard to the form of the instrument. *Stucki v. Ellis,* 114 Utah 486, 201 P.2d 486 (1949) (finding that contract sufficiently manifested homestead rights in absence of record title). RME relies on *Wasatch Mines Co. v. Hopkinson,* 24 Utah 2d 70, 465 P.2d 1007 (1970), where we stated that when a transfer of an interest in land is involved, "the better view is that it must be by deed." *Id.* at 74, 465 P.2d at 1010. However, we then considered the circumstances under which a document might be construed as a conveyance of an interest in land in the absence of a deed. In doing so, we focused on the document to see whether it identified the grantor, the grantee, and the interest granted or a description of the boundaries in a manner sufficient to construe the instrument as a conveyance of an interest in land. *Id.* After examining the written document, we held that the document did not identify the requisite elements in a manner sufficient to allow us to construe the instrument as a conveyance of an interest in land. *Id.* at 75, 465 P.2d at 1010.

■ The agreement between RME and L.A. Young does not meet the standard set out in *Wasatch Mines.* Not only is there uncertainty regarding the interest granted and the boundaries of the alleged interest, but there is no written document for the court to analyze. Thus, the mere oral understanding between RME and L.A. Young that permitted L.A. Young to remove slag from the property does not rise to the level of an interest in land under the test established in *Wasatch Mines.*

■ In addition, RME contends that it did not sell anything that had been "severed" from the land as required by section 59–12–102(13)(a)(iv) and that, therefore, the transaction could not be considered a sale of personal property. However, RME fails to take into account the fact that slag is the waste product of the copper-mining, milling, and smelting process, which involves the removal of valuable minerals from ore removed from the earth. Courts confronted with the task of attaching a property label on slag have treated it as both tangible personal property and real property. *Compare Manson v. Dayton,* 153 F. 258, 263 (8th Cir.1907) (concluding that slag was treated and dealt with as mere personalty) *with St. Louis Smelting & Refining Co. v. Hoban,* 357 Mo. 436, 443, 209 S.W.2d 119, 123 (1948) (concluding that slag should be considered real property). However, even jurisdictions recognizing that slag may be considered real property acknowledge that the classification depends upon the surrounding circumstances. *See Hayes v. Alaska Juneau Forest Indus., Inc.,* 748 P.2d 332 (Alaska 1988). We conclude that for sales tax purposes, when slag has been severed from the land in the mining process and placed in a pile, it is personal property and subject to taxation pursuant to section 59–12–102(13)(a)(iv).

## EXEMPTION REQUIRES A SALE TO THE STATE

We now turn to RME's contention that the sale to L.A. Young was exempt from sales tax because payment was made by a warrant issued by an agency of the State of Utah payable to RME as co-payee. Section 59–12–104 provides certain exemptions from taxation, including "sales to the state, its institutions, and its political subdivisions." Utah Code Ann. § 59–12–104(2).

■ The Commission enacted rule R865–19–42S pursuant to the statutory tax

exemption for "sales to the state." That rule provides:

> Sales made to the state of Utah, its departments and institutions or to its political subdivisions ... are exempt from tax if such property [is] for use in the exercise of an essential government function. If the sale is paid for by a warrant drawn upon the state's treasurer or official disbursing agent ... the sale is considered as being made to the state of Utah or its political subdivisions and exempt from tax.

RME relies on the last sentence of the rule, contending that payment by a state warrant exempts it from sales tax. It argues that because it required L.A. Young to make RME a co-payee on the warrants, the sale is "considered as being made to the state" and is thereby exempt from taxation. RME's interpretation of the rule is incorrect. Rule 42S was enacted pursuant to section 59–12–104(2), which requires a sale to the state in order to qualify for an exemption from sales tax. RME's interpretation would result in a broader exemption than the statute allows. Rules are subordinate to statutes and cannot confer greater rights or disabilities. *Sanders Brine Shrimp v. Audit Div.*, 846 P.2d 1304, 1306 (Utah 1993). Thus, where the statute allows an exemption for a sale to the state, a rule enacted pursuant to statute cannot confer a broader exemption. *See Utah Concrete Prods. Corp. v. State Tax Comm'n*, 101 Utah 513, 125 P.2d 408 (1942).

■ The correct interpretation of rule 42S acknowledges that the first sentence requires a sale to the state or its political subdivisions. Accordingly, RME's transaction does not qualify under the exemption. RME's sale of slag was clearly to L.A. Young. It did not negotiate with UDOT nor was it a party to the contract between L.A. Young and UDOT. Thus, because RME did not make a sale to the state, the

sale of slag to L.A. Young is a taxable transaction. *See id.* at 519, 125 P.2d at 411 (holding that sales made to contractor who builds roads for the state are not sales to the state and therefore are not exempt).

## PENALTY

■ In addition to the delinquent tax, RME assails the penalty imposed on it by the Auditing Division and the Commission. However, the record does not reflect the amount of the penalty or the statutory basis for its imposition. Accordingly, we remand the case to the Commission and direct it to reexamine the penalty in light of this court's decision in *Chicago Bridge & Iron Co. v. State Tax Commission*, 839 P.2d 303 (Utah 1992). In that case, we vacated a penalty imposed on the ground of "intentional disregard of law or rule" because the taxpayer's dispute with the Commission was in good faith and the taxpayer's position was arguable. Because the statutory basis for the penalty is not disclosed in the record, we cannot determine whether that case would be controlling here.

## CONCLUSION

We affirm the order of the Utah State Tax Commission which found that the sale of slag to L.A. Young was the sale of tangible personal property to a party other than the state of Utah and therefore subject to sales tax. We remand for reexamination of the imposition of the penalty.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.