Robert L. WARBURTON, Plaintiff
and Appellee,

v.

VIRGINIA BEACH FEDERAL SAVINGS
& LOAN ASSOCIATION; Jeremy Service Corporation, et al., Defendants and
Appellants.

No. 940016–CA.

Court of Appeals of Utah.

June 29, 1995.

John P. Ashton (argued), Thomas J. Erbin, Prince, Yeates & Geldzahler, Salt Lake City, for Va. Beach & Jeremy.

Anthony L. Rampton (argued), Elayne Wells Harmer, Fabian & Clendenin, Salt Lake City, for appellee.

Before ORME, DAVIS and GREENWOOD, JJ.

GREENWOOD, Judge:

Appellants Virginia Beach Federal Savings & Loan Association, et. al., (Virginia Beach) appeal from a summary judgment granting Robert L. Warburton an easement to play golf and use clubhouse facilities at the Jeremy Ranch housing development. We reverse.

## BACKGROUND

In the late 1970s, Gerald Bagley began developing Jeremy Ranch, a large residential housing project and golf course in Summit County, Utah. Bagley was the sole general partner of The Jeremy Ltd., a Utah limited partnership, the developer and titled owner of Jeremy Ranch. By 1980, Bagley had begun negotiating the sale of Jeremy Ranch lots with interested purchasers, utilizing lot reservation agreements (LRAs). The LRAs reserved a building lot at Jeremy Ranch for the purchaser, as well as a club membership at the Jeremy Ranch Golf and Country Club.

Most purchasers signed a standard form LRA, which contained club membership provisions that read as follows:

> It is understood that a Lifetime Family Membership in The Jeremy Ranch Golf and Country Club is included with the purchase of a lot on the Jeremy Ranch. There are no monthly dues, nor can any dues ever be assessed. This Membership is transferable. It may be sold without a transfer fee. It is not assessable.

The club membership provision of Warburton's LRA differed from that of the other purchasers and read as follows:

> It is understood that a *perpetual* Family Membership in The Jeremy Ranch Golf and Country Club *including all Jeremy Ranch Club Facilities* is included with the purchase of a lot on The Jeremy Ranch. There are no monthly dues, nor can any dues ever be assessed. This membership is transferable. It may be sold without a transfer fee. It is not assessable. *The obligations and provisions to the members of the club shall be binding upon any other owners, successors or assigns of the club.*

(Emphasis added.) The emphasized portions were unique to Warburton's LRA.

In 1982, Bagley negotiated with a loan broker for additional financing to continue developing Jeremy Ranch. Virginia Beach became the lead lender in a coalition of lenders that advanced a $12.5 million development loan to Jeremy Ltd. to continue the project. The loan, which was secured by a first trust deed on the entire Jeremy Ranch development, including the golf course, closed in November 1982. Jeremy Ltd. also pledged as collateral its interest in the LRAs, many of which required future payments to Jeremy Ltd. Jeremy Ltd. defaulted on the loan and Virginia Beach commenced foreclosure proceedings.

In 1988, a group of 180 LRA holders filed suit in Third District Court seeking to enjoin foreclosure. The parties filed cross-motions for partial summary judgment, and on August 22, 1991, the trial court granted the lot holders' motion, ruling that the standard LRA created easements in gross that included the right of the purchaser and his or her

family to use the golf course and club house facilities free of charge. Virginia Beach stipulated that many of the LRA holders, including Warburton, qualified for partial summary judgment as defined by the court's ruling, and the trial court granted partial summary judgment as to those LRA holders.[1]

Trial was held on the remaining issues in 1993. In late 1993, Virginia Beach settled with all of the plaintiffs except Robert Warburton, the appellee in this case.

## ISSUE ON APPEAL

The sole issue we address is whether the use of the term "membership" in Warburton's LRA can be construed as complying with the requirements of the statute of frauds and creating a real property interest.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *State Farm Fire & Casualty Co. v. Geary*, 869 P.2d 952, 954 (Utah App.1994). In reviewing a grant of summary judgment, this court views the facts in the light most favorable to the losing party. *Id.* This court does not defer to the legal conclusions of the trial court and reviews the decision for correctness. *Id.*

## ANALYSIS

Virginia Beach argues that the trial court erred in holding that the LRA grants

an easement. Virginia Beach claims the LRA does not meet the requirements of the statute of frauds and therefore cannot grant a real property interest.[2] We agree.

An affirmative easement in gross grants to the holder the right to enter and make use of the property of another for a particular purpose. *See Crane v. Crane*, 683 P.2d 1062, 1068 (Utah 1984) (holding that plaintiffs had prescriptive easement in gross to drive cattle across land). However, an easement is an interest in land within the meaning of the statute of frauds and must, therefore, be evidenced by a writing. Utah Code Ann. § 25–5–1 (1989);[3] *Wells v. Marcus*, 25 Utah 2d 242, 480 P.2d 129, 130 (1971); *Green v. Stansfield*, 886 P.2d 117, 122 (Utah App.1994).

The Utah Supreme Court has held that the preferred way to transfer an interest in land and meet the requirements of the statute of frauds is by deed. *Wasatch Mines Co. v. Hopkinson*, 24 Utah 2d 70, 465 P.2d 1007, 1010 (1970) (holding that documents purporting to create profit a prendre were insufficient under statute of frauds). However, a real property interest may be transferred through other documents and memoranda revealing an intent to transfer an interest in real property. *Id.*

One of the factors to consider in ascertaining the intent of the parties to an agreement purportedly transferring real property is whether the document sufficiently describes the interest granted "in a manner sufficient to construe the instruments as a conveyance of an interest in land." *Id.*[4]

---

1. The exact language of the LRAs varied from plaintiff to plaintiff, and Virginia Beach, in its brief, initially argued that partial summary judgment was granted with regard to only the sample LRA and did not apply to Warburton. However, counsel for Virginia Beach agreed during oral argument that this appeal should be decided on the basis of the specific language of Warburton's LRA. As a result, our analysis herein is directed to Warburton's LRA.

2. Virginia Beach also argues that even if such an interest was created, summary judgment was precluded by a genuine issue of material fact as to whether the LRA provides sufficient notice of the interest. Because we hold that Warburton's

LRA does not meet the requirements of the statute of frauds, we do not address this argument.

3. Section 25–5–1 reads, in pertinent part:

   No estate or interest in real property ... shall be created, granted, assigned, surrendered or declared otherwise than by act or operation of law, or by deed or conveyance in writing subscribed by the party creating, granting, assigning, surrendering or declaring the same.
   Utah Code Ann. § 25–5–1 (1989).

4. The *Wasatch Mines* court stated that in order to transfer an interest in real property, the documents should sufficiently describe (1) the grant-

Words that "clearly show intention to grant an easement are sufficient, provided the language is certain and definite in its term." *Martinez v. Martinez,* 93 N.M. 673, 604 P.2d 366, 368 (1979). According to the Restatement of Property,

> [s]ome degree of definiteness in the scope or extent of an interest is essential to its recognition as a property interest.... When an interest is definite and precise in its extent it is more readily recognized as an entity which can be the subject matter of a conveyance than when it is indefinite. In order that privileges of use may be recognized as easements there must be some degree of definiteness in the privileged use.

*Restatement (Second) of Property* § 450 cmt. m (1984).

Warburton argues that the LRA sufficiently describes the easement. He cites several cases in support, among them *Maw v. Weber Basin Water Conservancy Dist.,* 20 Utah 2d 195, 436 P.2d 230 (1968), in which the Utah Supreme Court held that hunting and shooting privileges at the Ogden Duck Club constituted an interest "in the nature of a noncommercial easement in gross." *Maw,* 436 P.2d at 232. This case, however, is readily distinguishable because the *Maw* court addressed whether such rights to hunt and shoot were inheritable, not whether they were sufficiently described to comply with the statute of frauds. *Id.*

Warburton also cites two cases from other jurisdictions—*Bradley v. Frazier Park Playgrounds,* 110 Cal.App.2d 436, 242 P.2d 958

(1952), and *High v. Davis,* 283 Or. 315, 584 P.2d 725 (1978). Although these cases concern statute of frauds issues, neither squarely addresses the question presented in the instant case—whether the language of a written agreement sufficiently describes the interest to be transferred. Moreover, it is likely that the California and Oregon courts did not reach this issue because the interests involved were explicitly described as the right to *use* real property. For example, the property interest in *Bradley* was described as follows: "All streets, trails, drives, or unnumbered areas adjacent thereto, are reserved for *the use* of owners of real property." [5] *Bradley,* 242 P.2d at 958 (emphasis added). Similarly, the *High* case concerned memberships granting "the exclusive right to hunt, fish and *use the property.*" *High,* 584 P.2d at 728 (emphasis added). Because the documents in both cases stated that the purchasers were granted a right to use real property, there can be little question that the interest involved was an easement.

By contrast, there is nothing in the LRA that would suggest the right to use real property. Rather, the interest granted in the LRA is described as a "membership in The Jeremy Ranch Golf and Country Club." Accordingly, "membership" is the term upon which we focus in construing the document. In interpreting contracts, "the ordinary and usual meaning of the words used is given effect." *Berman v. Berman,* 749 P.2d 1271, 1273 (Utah 1988). The ordinary meaning of contract terms is often best determined through standard, non-legal dictionaries.

---

or, (2) the grantee, (3) the interest granted, and (4) the property boundaries. *Wasatch Mines Co. v. Hopkinson,* 24 Utah 2d 70, 465 P.2d 1007, 1010 (1970). These criteria were recently approved in *Rocky Mountain Energy v. Tax Comm'n,* 852 P.2d 284, 286 (Utah 1993). Although all four *Wasatch Mines* elements are important and were extensively briefed by the parties, the third element—the description of the interest granted—is most relevant to the issues in the instant case.

Warburton's LRA was probably deficient in other elements as well. For example, his LRA probably did not provide an adequate boundary description because the golf course was not even in existence at the time the LRAs were sold. In fact, the LRA stated only that the golf course was

"to be constructed," and the golf course plat had not then been recorded.

**5.** *Bradley* is also distinguishable in that it deals with an equitable easement, which is not at issue here. Warburton argues that he should be granted an equitable easement under *Wells v. Marcus,* 25 Utah 2d 242, 480 P.2d 129 (Utah 1971), because part of his payments under the LRA went to help build the golf course. In *Wells,* the Utah Supreme Court stated that an oral license may be enforceable, despite the statute of frauds, if the licensee has permanently improved the land in ways that benefit the licensor. *Wells,* 480 P.2d at 130. However, this argument was not raised at the trial level and cannot be raised for the first time on appeal. *James v. Preston,* 746 P.2d 799, 801 (Utah App.1987).

*See Government Employees Ins. Co. v. Dennis,* 645 P.2d 672, 675 (Utah App.1982). "Membership" is "the state or status of being a member." *Webster's Third New Int'l Dictionary* (1986). "Member" is defined as "one of the individuals [comprising] a society, community, association, or other group." *Id.*[6] Given its common meaning, a "membership" is at most a contractual right in a group that may or may not own real property and other assets. By itself, a club membership does not give rise to an interest in club assets.[7] Thus, the LRA satisfied the statute of frauds insofar as it clearly described the interest granted as a "membership." It fails, however, to adequately meet the statute of frauds because a "membership" is not an interest in real property. We therefore conclude that the term "membership," as used in the LRA, is insufficient under *Wasatch Mines* to create an interest in real property.[8]

For the foregoing reasons, we must conclude that the language in the LRA does not describe an easement sufficiently to meet the requirements of the statute of frauds.

## CONCLUSION

Warburton's LRA did not convey an easement to the golf course and clubhouse facilities at Jeremy Ranch. The term "membership," as used in the LRA, cannot be construed as transferring an interest in real property. The LRA cannot convey an interest under the requirements of the statute of frauds as articulated in *Wasatch Mines.*

6. We note that while the standard dictionary definitions may be more helpful in this context, legal reference sources also support our reading of the LRA. *Black's Law Dictionary,* for example, defines member as "[o]ne of the persons constituting a family, partnership, association, corporation, guild, court, legislature, or the like." *Id.* at 984 (6th ed. 1990). Member also denotes "a person belonging to some association, society, community, party, etc." "Member," 27 *Words and Phrases* 12 (1961).

7. In this case, the Jeremy Ranch and Golf Club did not hold title to the golf course property. Jeremy Ltd. held title and pledged it as collateral to Virginia Beach.

8. Moreover, the fact that the terms are insufficient does not make them ambiguous for the

Accordingly, we reverse the trial court's grant of summary judgment to Warburton.

DAVIS, Associate P.J., concurs.

ORME, Presiding Judge, concurring in the result:

I agree that the summary judgment should be reversed. My route in coming to this conclusion varies somewhat from that described in the main opinion.

A plain reading of the LRA shows that Dr. Warburton was contractually entitled, as of the time he closed on the lot reserved for him, to a perpetual, free membership in a country club not in existence at the time he signed his LRA. Such a club membership, expressly stated to be freely transferable, is personal property.

Virginia Beach had notice of Dr. Warburton's existing right to purchase a lot when it made the loan. But while it is true that its borrower agreed to transfer a club membership to Dr. Warburton in due course, Virginia Beach never agreed to honor that obligation. When the borrower defaulted and Virginia Beach foreclosed, Virginia Beach was required to convey Dr. Warburton his lot, because his LRA gave him an equitable real property interest senior to Virginia Beach's trust deed and therefore enforceable against Virginia Beach. By contrast, the obligation to transfer a club membership, mere personalty, remained the obligation of the borrower.

Dr. Warburton has his action for damages against the borrower for breach of the contract to provide him a club membership. But

purpose of admitting extrinsic evidence. Warburton argues that even if the terms in the LRA were insufficient to create an easement within the requirements of the statute of frauds, the court should have admitted extrinsic evidence to show that the LRA holders and the developer intended to create an easement. This argument fails because, once again, the language in the LRA is simply insufficient to create an easement, and the fact that the parties interpret the terms differently does not create an ambiguity that would allow extrinsic evidence. *Watson v. Hatch,* 728 P.2d 989, 990 (Utah 1986) (plain language "is not rendered ambiguous by the fact that the parties urge different interpretations of it.").

because the club membership was only personalty, Virginia Beach's title to the property was not encumbered by the borrower's contract to furnish such a membership and Virginia Beach is not otherwise obligated to furnish a membership to Dr. Warburton.