2000 Utah Ct. App. 82

**Lawrence M. RUSSELL; Russell/Packard Development, Inc.; Saratoga Springs Development, L.C.; Merlin Smith; and Margie Smith, Plaintiffs and Appellees,**

v.

**John J. THOMAS; and PRP Development, L.C., Defendants and Appellants.**

**No. 981615–CA.**

Court of Appeals of Utah.

March 23, 2000.

David O. Black, Black, Stith & Argyle, Salt Lake City, for Appellants.

Michael R. Carlston and Rodney R. Parker, Snow, Christensen & Martineau, Salt Lake City, for Appellees.

Before Judges BILLINGS, DAVIS, and ORME.

## OPINION

DAVIS, Judge:

¶ 1 Defendants John J. Thomas and PRP Development, L.C. appeal the trial court's order removing defendants' Notice of Interest from plaintiffs' property. We affirm.

## FACTS[1]

¶ 2 PRP Development, L.C. (PRP) was created when Russell/Packard Development, Inc. (Russell/Packard) and Premier Homes, L.C. joined to begin purchasing and developing residential property. John J. Thomas had an interest in Premier Homes, and Lawrence Russell had an interest in Russell/Packard. In November of 1996, PRP contracted with C.M.T. Investments to buy seventy-two lots in the Saratoga Springs Phase I subdivision (Saratoga Property), which were to be developed into townhouses.

¶ 3 Problems arose between Russell and Thomas. As a result, in April of 1997, PRP, Russell/Packard, Premier Homes, and Russell executed a Purchase and Development Agreement (Agreement), wherein Russell sold his interest in PRP to Premier Homes and also purchased the Saratoga Property from PRP. The relevant terms governing the sale of the Saratoga Property provided as follows:

2. *Saratoga Property.* PRP agrees to assign to Russell all of its right, title and interest in the Contract and its right to acquire the Saratoga Property at the time of closing.[2] Russell agrees to pay PRP the sum of $528,000 for PRP's interest in the Saratoga Property. Said sum shall be paid as follows:

a. Russell shall pay PRP the sum of $8,000 for each Lot on 66 Lots of the Saratoga Property. In such an event, Russell shall be entitled to sell the first 6 lots without making any payment to PRP. On the last 66 lots, Russell shall pay PRP the sum of $8,000 at the time of the sale of each Lot. . . .

. . . .

c. The amounts due PRP shall be secured by a standard trust deed and trust deed note in favor of PRP to be recorded after the closing of the construction loan and/or an escrow arrang[e]ment at American Legal Title, acceptable to PRP, which arrang[e]ment provides for the payment of $8,000 to PRP upon the sale of each Lot.

¶ 4 At no time did any of the plaintiffs convey to PRP an interest in any of the lots. Notwithstanding, on June 22, 1998, PRP filed a "Notice of Interest" with the county recorder, which provided:

NOTICE OF INTEREST is hereby given that PRP Development, L.C., a Utah limited liability company, pursuant to an agreement dated April 2, 1997, and a Uniform

---

1. The facts are undisputed.

2. Apparently PRP transferred its interest to Russell in accordance with the Agreement.

Real Estate Contract[3] dated November 5, 1996 and November 8, 1996, copies of each of which are attached hereto ..., claims an interest in and to lots [in the Saratoga Property].

¶ 5 Plaintiffs filed a Petition to Clear Title under Utah Code Ann. § 38–9–7 (1997), seeking "summary relief to nullify a wrongful lien placed upon [the Saratoga Property]." Plaintiffs argued to the trial court that defendants "have no legitimate legal claim to an interest in these properties, and no contractual or other legal right to file a so-called 'Notice of Interest.'" Defendants filed an Objection to Petition to Clear Title, contending that "the Notice of [Interest[4]] does not create a lien, nor is it an encumbrance upon title. The Notice of [Interest] is nothing more than a notice to the world that [defendants] are entitled to trust deeds upon the property pursuant to agreement between the parties." Accordingly, defendants argued, the Notice of Interest was not a wrongful lien as defined by section 38–9–1(6) of the Utah Code, and the Saratoga Property should not be released from the Notice of Interest.

¶ 6 A hearing was held on plaintiffs' petition, after which the trial court entered Findings of Fact and Conclusions of Law. The trial court made the following relevant findings[5]:

3. None of the [plaintiffs] ha[d] conveyed to PRP or Thomas any interest in the [Saratoga Property], or signed or authorized the filing of a notice of interest with regard to those properties.[6]

4. No order or judgment of a court of competent jurisdiction authorizing such an action is in existence.

Based on its findings, the trial court made the following conclusions of law:

1. The Notice of Interest filed by [defendants] on June 22, 1998, constitutes a wrongful lien within the meaning of Utah Code Annotated § 38–9–1.

2. The Notice of Interest filed by [defendants] is not authorized either by Utah Code Annotated Title 38 or by Utah Code Annotated § 57–9–4 or any other Utah or federal statute.

3. The Notice of Interest filed by [defendants] was not authorized by an order or judgment of a court of competent jurisdiction.

The trial court therefore entered an order declaring the Notice of Interest "to be void ab initi[o], and the properties subject to the Notice of Interest are hereby released from the Notice of Interest."

¶ 7 Defendants appeal.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 8 The issue for our review is whether defendants' Notice of Interest, which defendants later claimed was filed pursuant to Utah Code Ann. § 57–9–4 (1994), is a wrongful lien as defined in Utah Code Ann. § 38–9–1(6) (1997), and therefore subject to the summary proceedings provided in Utah Code Ann. § 38–9–7 (1997). This issue calls for statutory interpretation and thus presents a question of law which we review for correctness, giving no deference to the trial court's legal conclusions. See In re H.J., 1999 UT App 238, ¶ 15, 986 P.2d 115.

---

3. This contract is the contract between PRP and C.M.T. Investments under which PRP acquired the Saratoga Property, the property PRP agreed to sell to plaintiffs under the Agreement. It is unclear why a copy of the real estate contract was attached to the Notice of Interest since it was unrelated to the interest claimed under the Agreement.

4. In its Objection to Petition, defendants called their "Notice of Interest" a "Notice of Claim." The record shows that it was a "Notice of Interest" that was filed with the county recorder. Thus, we refer to it as such.

5. The trial court's findings are not challenged on appeal.

6. Although the trial court labels this determination a "finding of fact," which defendants do not challenge, whether the Agreement purports to create an interest in land is a conclusion of law. "On appeal, we disregard the labels attached to findings and conclusions and look to the substance. Therefore, that which a trial court labels a 'finding of fact' may be in actuality a conclusion of law, which we review for correctness." Gillmor v. Wright, 850 P.2d 431, 433 (Utah 1993).

## ANALYSIS

### Notice of Interest

■ ¶ 9 Defendants argue that plaintiffs are not entitled to the summary relief set out in section 38–9–7 [7] because defendants' Notice of Interest was authorized by section 57–9–4,[8] and was therefore properly filed.[9] Plaintiffs argue that defendants have no interest in the Saratoga Property and, therefore, the Notice of Interest was improperly filed under section 57–9–4 and otherwise is a wrongful lien as defined in section 38–9–1(6).

¶ 10 Section 38–9–7 entitles a party to expedited proceedings to determine if a "document is a wrongful lien." Utah Code Ann. § 38–9–7(1), (4) (1997). "[I]f the court determines that the document is a wrongful lien, the court shall issue an order declaring the wrongful lien void ab initio, releasing the property from the lien, and awarding costs and reasonable attorney's fees to the petitioner." Id. § 38–9–7(5)(a).

¶ 11 A wrongful lien is defined in section 38–9–1(6):

"Wrongful lien" means any document that purports to create a lien or encumbrance on an owner's interest in certain real property and at the time it is recorded or filed is not:

(a) expressly authorized by this chapter or another state or federal statute;

(b) authorized by or contained in an order or judgment of a court of competent jurisdiction in the state; or

(c) signed by or authorized pursuant to a document signed by the owner of the real property.

Id. § 38–9–1(6) (1997).

¶ 12 It is undisputed that subsections (b) and (c) of section 38–9–1(6) do not apply. The issue is whether defendants' Notice of Interest was expressly authorized by section 57–9–4, and therefore falls within the exception set out in subsection (a).

■ ¶ 13 To file a Notice of Interest under section 57–9–4, the person must minimally "claim[ ] to have an interest in land." Id. § 57–9–4(1) (1994). Whether defendants' interest is an interest in land or a contractual right is governed by the Agreement executed by the parties. See Atlas Corp. v. Clovis Nat'l Bank, 737 P.2d 225, 231 (Utah 1987) (" '[T]he nature of the ... interest and the rights of its owner must be determined from the provisions of the instrument which created it.' ") (quoting 5 E. Kuntz, A Treatise on the Law of Oil & Gas § 63.5 (1978)). In determining whether a document purports to convey an interest in land, the court must "focus[ ] on the document to see whether it identified the grantor, the grantee, and the interest granted or a description of the boundaries in a manner sufficient to construe

7. Section 38–9–7(1) provides: "Any record interest holder of real property against which a wrongful lien as defined in Section 38–9–1 has been recorded may petition the district court in the county in which the document was recorded for summary relief to nullify the lien." Utah Code Ann. § 38–9–7(1) (1997).

8. Section 57–9–4(1) provides, in relevant part:

Any person claiming an interest in land may preserve and keep effective such interest by filing for record during the forty-year period immediately following the effective date of the root of title of the person whose record title would otherwise be marketable, a notice in writing, duly verified by oath, setting forth the nature of the claim.

Utah Code Ann. § 57–9–4(1) (1994).

9. In the Summary of Argument section of their brief, defendants allege that a Notice of Interest is not an encumbrance within the meaning of Utah Code Ann. § 38–9–1(6) (1997). Defendants

state, "In fact, the law is clear that a Notice of Interest is not an encumbrance upon property...." However, except for this brief reference, defendants do not develop the argument and cite no authority therefore. Accordingly, we will not address this issue. See Scott v. Majors, 1999 Utah Ct.App. 139, ¶ 34 n. 6, 980 P.2d 214, cert. denied, 1999 Utah Lexis 101, 994 P.2d 1271 (1999).

Even if this issue were properly before this court, the Notice of Interest is clearly a lien or encumbrance upon the Saratoga Property. See Webb v. Interstate Land Corp., 920 P.2d 1187, 1190 (Utah 1996) (defining "encumbrance as 'any right a third party holds in land which constitutes a burden or limitation upon the rights of the fee title holder' ") (emphasis and citation omitted); cf. Blomquist v. Bingham, 652 P.2d 900, 902 (Utah 1982) ("[T]he recording of the Notice of Interest may have prevented the sellers from selling the property to anyone else...."). Indeed, there would be little point in filing the notice if it did not result in encumbering the property.

the instrument as a conveyance of an interest in land." *Rocky Mountain Energy v. Utah State Tax Comm'n*, 852 P.2d 284, 286 (Utah 1993); *accord Wasatch Mines Co. v. Hopkinson*, 24 Utah 2d 70, 465 P.2d 1007, 1010 (1970); *see also Warburton v. Virginia Beach Fed. Sav. & Loan Ass'n*, 899 P.2d 779, 781 n. 4 (Utah Ct.App.1995).

¶ 14 The relevant terms of the Agreement provide:

> The amounts due PRP shall be secured by a standard trust deed and trust deed note in favor of PRP to be recorded after the closing of the construction loan and/or an escrow arrang[e]ment at American Legal Title, acceptable to PRP, which arrang[e]ment provides for the payment of $8,000 to PRP upon the sale of each Lot.

Under the plain, unambiguous language of the Agreement, defendants do not have an interest in land, but an agreement that plaintiffs will grant to defendants an interest in the Saratoga Property at some future time. Even defendants suggest that they "were entitled to a trust deed upon the property in question upon closing of a construction loan to be granted from [plaintiffs]."[10] Thus, the Agreement does not purport to convey an interest in land, but is nothing more than a promise to do so at a later time.

¶ 15 Because defendants do not have an interest in the Saratoga Property, the Notice of Interest could not be authorized by section 57-9-4 and is therefore not exempted by subsection (a) from the wrongful lien definition.[11] Accordingly, defendants' Notice of Interest is a wrongful lien under section 38-9-1(6), and plaintiffs were entitled to the summary relief set out in section 38-9-7.

### Attorney Fees

¶ 16 The trial court awarded plaintiffs costs and attorney fees pursuant to Utah Code Ann. § 38-9-7(5)(a) (1997), which provides: "Following a hearing on the matter, if the court determines that the document is a wrongful lien, the court shall issue an order ... awarding costs and reasonable attorney's fees to the petitioner." Because plaintiffs were awarded fees and costs below and because they are the prevailing parties on appeal, we grant plaintiffs their costs and reasonable attorney fees on appeal. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998) ("[W]hen a party who received attorney fees below prevails on appeal, 'the party is also entitled to fees reasonably incurred on appeal.'") (quoting *Utah Dep't of Soc. Servs. v. Adams*, 806 P.2d 1193, 1197 (Utah Ct.App.1991)). We remand for a determination of those costs and reasonable attorney fees.

### CONCLUSION

¶ 17 Because defendants did not have an interest in the Saratoga Property, the Notice of Interest was not authorized by section 57-9-4. Accordingly, it was a wrongful lien as defined by section 38-9-1(6), the trial court correctly declared it to be void ab initio, *see* Utah Code Ann. § 38-9-7(5)(a) (1997), and correctly released the Saratoga Property.

¶ 18 Because plaintiffs were the prevailing party on appeal, we remand to the trial court for a determination of reasonable costs and attorney fees.

¶ 19 Affirmed and remanded.

¶ 20 WE CONCUR: JUDITH M. BILLINGS, Judge, and GREGORY K. ORME, Judge.

---

10. For the first time at oral argument, defendants argued that they had at least an equitable interest in the Saratoga Property, similar to a buyer's interest in a real estate purchase contract. However, the Agreement here is not analogous to a real estate purchase contract in that the Agreement does not purport to convey an interest in property, but contains a qualified promise to do so at a later time. *See Cannefax v. Clement*, 786 P.2d 1377, 1379 (Utah Ct.App. 1990) ("[O]nce parties have entered into a binding and enforceable land sale contract, the buy-er's interest in the contract is said to be real property and the seller's retained interest is characterized as personal property."), *aff'd*, 818 P.2d 546 (Utah 1991). Accordingly, we reject this argument.

11. Based on our holding, we do not reach plaintiffs' argument that the interest claimed by defendants is not within the purview of the Marketable Record Title Act in any event. *See* Utah Code Ann. §§ 57-9-1 to -10 (1994 & Supp.1999).