2001 UT 57

MORGAN COUNTY, a political subdivision of the State of Utah, Intervenor and Petitioner,

v.

HOLNAM, INC. and Utah State Tax Commission, Respondents.

No. 990905.

Supreme Court of Utah.

July 2, 2001.

Kelly W. Wright, Morgan, for intervenor and petitioner.

Randy M. Grimshaw, Maxwell A. Miller, Mark Shurtleff, Att'y Gen., Timothy A. Bodily, Asst. Att'y Gen., Salt Lake City, for respondents.

HOWE, Chief Justice:

¶ 1 Morgan County, as intervenor, seeks review of the Utah State Tax Commission's denial of the County's request for reconsideration of the Commission's decision allowing Holnam, Inc. the full manufacturing exemption from sales and use tax on certain purchases of machinery and equipment for the expansion of its cement manufacturing plant.

### BACKGROUND

¶ 2 Holnam, Inc., a Delaware corporation, owns and operates the Devil's Slide facility, a cement manufacturing plant in Morgan

County, Utah.[1] Before 1997, the plant made cement using the "wet process," a technology combining water with feedstock[2] to create a slurry, which is heated in a kiln until clinker[3] is produced. The plant's production capacity using this process was about 350,000 tons per year. Holnam decided to construct a much larger facility at Devil's Slide in September 1995 and began construction in about February 1996. This facility uses the more efficient "dry process" technology, which among other differences, processes the feedstock using hot exhaust gases and has a production capacity of 700,000 tons per year, double that of the old facility. The "wet process" plant was shut down October 27, 1997, and clinker was first produced in the new "dry process" plant on November 14, 1997. Beginning in December 1995, Holnam purchased several items of tangible personal property for the new facility.

¶3 The Auditing Division of the Utah State Tax Commission (Division) audited Holnam for the period May 1, 1995, through March 31, 1998, and assessed several tax deficiencies to Holnam, including those arising out of the purchase of manufacturing equipment and machinery for the new plant on which sales taxes had not been paid. Holnam petitioned the Commission for a redetermination of the assessments, and the Commission determined, inter alia, that the machinery and equipment Holnam purchased for the new plant qualified for the manufacturing equipment exemption in section 59–12–104(15) of the Utah Code. Morgan County intervened and joined the Division's[4] subse-

quent petition for reconsideration, which the Commission denied. The County now seeks our review.

## ANALYSIS

¶4 The crux of this review is whether the machinery and equipment purchased by Holnam qualify for the full manufacturing exemption from sales tax as equipment used in "new or expanding operations," or whether the items are "normal operating replacements" that qualify for only a partial exemption. The question is controlled by section 59–12–104(15) of the Utah Code, which sets out the manufacturing exemptions to the sales and use tax .[5]

¶5 To administer the manufacturing exemptions, the Commission promulgated R865–19S–85 of the Utah Administrative Code. It amended the rule following the 1995 amendment to section 59–12–104(15), but the amended rule did not take effect until August 21, 1997. Thus, two versions of the rule (old rule 85 and new rule 85) potentially apply to Holnam's purchases. The Commission found that the bulk of Holnam's purchases were made from December 1995 to July 1997 when the old rule was in effect. It determined that under the 1996 version of section 59–12–104(15) and the definition of new or expanding operations contained in old rule 85, these items were purchased for use in new and expanding operations—not normal operating replacements-and were thus fully exempt.[6] The Commission applied the definition of normal operating replacements we articulat-

---

1. We recite the facts as found by the Commission. *See* Utah Code Ann. § 59–1–610(1)(a) (2000) (stating that appellate court shall "grant the [tax] commission deference concerning its written findings of fact, applying a substantial evidence standard on review").

2. Feedstock is the raw material including limestone, sand, iron ore, clay and gypsum from which cement is made.

3. Clinker is an intermediate product consisting of a glassy lump of stony matter that is the product of fusing together clay and limestone.

4. The Customer Service Division of the Utah State Tax Commission was also a party in the case. However, only the County seeks review of the Commission's decision with this court.

5. We refer to the 1996 version of section 59–12–104(15) (the current version of the statute is numbered 59–12–104(14)). No machinery or equipment was purchased until December 1995, so the Commission correctly determined that this version of the Code governs all relevant purchases through July 1, 1997. The statute was amended again in 1997. The 1997 version governs the purchases made July 1, 1997, through November 1997.

6. Purchases made between July 1, 1997, and August 21, 1997, are governed by the old rule and the 1997 version of the statute. Purchases made from August 21, 1997, through the end of the audit period are governed by the 1997 version of the statute and the new rule.

ed in *Eaton Kenway v. Auditing Division,* 906 P.2d 882 (Utah 1995), to determine that Holnam's purchases were not normal operating replacements because they were not made in the ordinary course of business. It also found that Holnam's primary purpose in constructing the new plant was not to modernize or update the old plant, but to increase production or capacity, thus qualifying as a new or expanding operation.

¶ 6 The County contends that the Commission erred because it failed to follow its own rule defining new and expanding operations and normal operating replacements. The Commission responds that it correctly applied old rule 85 in compliance with the 1996 version of the statute.

■■■■ ¶ 7 To resolve this dispute, we review the Commission's interpretation of section 59–12–104(15) and the old rule. We review its interpretation of the statute for correctness, *Chris & Dick's Lumber & Hardware v. Tax Comm'n,* 791 P.2d 511, 513 (Utah 1990), and its interpretation of its own rule for reasonableness, *SF Phosphates Co. v. Auditing Div.,* 972 P.2d 384, 385 (Utah 1998) (citing *Thorup Bros. Constr. Inc. v. Auditing Div.,* 860 P.2d 324, 327 (Utah 1993)). In our review, we "look to the plain meaning of the language [of the statute] to discern the legislative intent." *Chris & Dick's,* 791 P.2d at 514 (citing *Allisen v. Am. Legion Post No. 134,* 763 P.2d 806, 809 (Utah 1988)), and we recognize that administrative rules "must be construed in a manner consistent with [their governing] statute." *SF Phosphates,* 972 P.2d at 386; *see also Airport Hilton Ventures, Ltd. v. Utah State Tax Comm'n,* 1999 UT 26, ¶ 6, 976 P.2d 1197 (same); *Crossroads Plaza Ass'n v. Pratt,* 912 P.2d 961, 965 (Utah 1996) (same). We also note that "'[r]ules are subordinate to statutes and cannot confer greater rights *or disabilities.'*" *SF Phosphates,* 972 P.2d at 386 (emphasis added) (quoting *Rocky Mountain Energy v. State Tax Comm'n,* 852 P.2d 284, 287 (Utah 1993)).

¶ 8 Section 59–12–104(15) provides:

The following sales and uses are exempt from the taxes imposed by [the sales and use tax] chapter . . . . (a) sales or leases of machinery and equipment purchased or leased by a manufacturer on or after July 1, 1995 for:

(i) use in *new or expanding operations* related to the manufacturing process in any manufacturing facility in Utah:

. . . .

(B) for purposes of this subsection, the commission shall by rule define the terms "new or expanding operations" and "establishment";

(ii) *normal operating replacements,* which include replacement machinery and equipment in any manufacturing facility in Utah, at the following rate:

(A) for taxable years beginning July 1, 1996, 30% of the exemption shall be allowed;

(B) for taxable years beginning July 1, 1997, 60% of the exemption shall be allowed; and

(C) for taxable years beginning July 1, 1998, 100% of the exemption shall be allowed[.]

Utah Code Ann. § 59–12–104(15) (1996) (emphasis added).

¶ 9 This statute provides exemptions for two categories of purchases of machinery and equipment: normal operating replacements, which have a graduated exemption schedule, and machinery and equipment used in new or expanding operations, which are fully exempt. In subsection (15)(a)(i)(B), the Commission is given an explicit grant of authority to define by rule "new or expanding operations," which it did in both the old and new versions of rule 85. Old rule 85 defines new and expanding operations as "manufacturing, processing, or assembling activities that: (1) are substantially different in nature, character, or purpose from prior activities; (2) are begun in a new physical plant location in Utah; or (3) increase production or capacity." Utah Admin. Code R865–19S–85(A)(3) (effective before Aug. 21, 1997). It also makes new and expanding operations subject to "limitations dealing with normal operating replacements." *Id.*[7] The Commission found

---

7. The new rule defines new and expanding operations as "(i) the creation of a new manufactur-

that Holnam's new plant was a new and expanding operation because the company's primary purpose in constructing the new plant was to increase production or capacity, and the result of the construction was a doubling of its capacity from 350,000 tons of cement per year to 700,000 tons per year. According to old rule 85, manufacturing activities that increase production or capacity qualify as new and expanding operations. As a matter of law, then, the Commission's determination that the purchase of equipment at issue qualified for the full manufacturing exemption is correct unless that equipment can be considered a normal operating replacement.

¶ 10 The old and new rule 85 also define normal operating replacements. Although it was implicitly authorized to define normal operating replacements in the former version of the statute, the Commission was not given the same authorization in the 1996 amendment. Because the statute does not authorize the Commission to define normal operating replacements, we review its definition for correctness. *See Airport Hilton Ventures*, 1999 UT 26 at ¶ 7, 976 P.2d 1197 (stating that a "no-deference standard must be applied unless a statute expressly grants the agency discretion to interpret a statute"). Accordingly, insofar as the Commission's definition of normal operating replacements does not "confer greater rights *or* disabilities'" than the governing statute and can be construed consistent with it, we will apply it. *SF Phosphates*, 972 P.2d at 386 (emphasis added) (quoting *Rocky Mountain Energy v. State Tax Comm'n*, 852 P.2d 284, 287 (Utah 1993)) (emphasis added).

¶ 11 Old rule 85 states that normal operating replacements

means machinery or equipment that replaces existing machinery or equipment of

a similar nature, *even if the use results in increased plant production or capacity.* . . . If new machinery or equipment that is purchased or leased has the same or similar purpose as machinery or equipment retired from service within 12 months before or after the purchase date, that new machinery or equipment is considered as replacement and is not exempt.

Utah Admin. Code R865–19S–85(A)(6) (emphasis added). The County contends that the Commission's factual finding regarding Holnam's purchases demands the legal conclusion that those purchases are normal operating replacements. The Commission found that "the new equipment that Holnam purchased to replace its cement plant at Devil's Slide 'replace[d] existing machinery and equipment of a similar nature' and 'similar purpose' even though those replacements resulted in increased plant production or capacity." The County correctly points out that this language shadows the exact language defining normal operating replacements in rule 85, and argues that even though the replacements increase production or capacity, they are normal operating replacements.

¶ 12 However, the Commission also explicitly found that the purchases were not made in the regular course of business and were thus not normal operating replacements because Holnam's primary purpose in replacing the old plant was not to upgrade or modernize, but was to increase plant production or capacity. The County, although it recognizes that purchases must necessarily be made in the ordinary course of business to qualify as normal operating replacements, argues that the Commission had no authority to determine that replacements whose primary purpose is to increase production or capacity are expansionary and not in the regular course of business.[8] The Commission counters that the statute and rule demand a distinction

---

ing operation in this state; or (ii) the expansion of an existing Utah manufacturing operation if the expanded operation increases production or capacity or is substantially different in nature, character, or purpose from that manufacturer's existing Utah manufacturing·operation." Utah Admin. Code R865–19S–85 (effective Aug. 21, 1997). It also makes new and expanding operations subject to "limitations on normal operating replacements." *Id.*

8. The County seems to argue in the alternative that the Commission's factual conclusion that Holnam's purchases were not made in the ordinary course of business is flawed. However, the County has failed to marshal the evidence in support of its contention, and thus we will not disturb the Commission's findings on this issue. *See* Utah R.App. P. 24(a)(9).

between expansionary replacements and normal operating replacements, or those replacements made in the regular course of business. In other words, as we held in *Eaton Kenway v. Auditing Division,* normal operating replacements do not include all replacements, but only those replacements made in the ordinary course of business. *See* 906 P.2d 882, 887 (Utah 1995). We agree with the Commission that in order to determine whether equipment "replaces existing machinery or equipment of a similar nature, even if the use results in increased plant production or capacity," it must first determine whether that replacement equipment was purchased in the regular course of business. It is reasonable to make that determination based on whether the primary purpose of the equipment is expansionary or whether it is to replace existing machinery in the ordinary course of business because, as the Commission argues, "as a practical matter, a new plant will consist of machinery and equipment that serves both an expansionary and replacement purpose." This determination clearly requires the sifting of facts in each case.

¶ 13 Any other interpretation of the rule and statute would make the definition of new and expanding operations in rule 85 meaningless and would narrow the exemption beyond the point intended by the statute. Old rule 85 clearly defines new and expanding operations as activities that increase production or capacity. Under that rule, equipment purchased for use in new and expanding operations qualifies for a full exemption. Unless a distinction is made between equipment that is purchased *for the purpose* of increasing production or capacity and equipment purchased in the ordinary course of business that *incidentally* increases production or capacity, any equipment purchased that increases production or capacity could be considered a normal operating replacement and the third prong of the definition of new and expanding operations would be meaningless. This result would impermissibly constrict the category of purchases qualified for the full tax exemption.

¶ 14 We affirm the Commission's grant of the full manufacturing exemption.

¶ 15 Associate Chief Justice RUSSON, Justice DURHAM, Justice DURRANT, and Justice WILKINS concur in Chief Justice HOWE's opinion.