2009 UT App 180

In the matter of the ESTATE
OF Eva L. MYERS.

Allan G. Birch, Glenn L. Birch, and
James Birch, Plaintiffs, Appellants,
and Cross-appellees,

v.

Bernard J. Myers, individually and as
named trustee of the Bernard J. Myers
and Eva L. Myers Revocable Living
Trust; and John Does 1–4, Defendant,
Appellee, and Cross-appellant.

No. 20080395–CA.

Court of Appeals of Utah.

July 2, 2009.

Edward M. Garrett, Salt Lake City, for Appellants and Cross-appellees.

Kent B. Alderman, David R. Hall, and Matthew D. Cook, Salt Lake City, for Appellees and Cross-appellants.

Before Judges THORNE, DAVIS, and McHUGH.

MEMORANDUM DECISION

DAVIS, Judge:

¶ 1 Plaintiffs Allan G. Birch, Glenn L. Birch, and James Birch (collectively, the Birches) appeal the trial court's decisions that (1) the Notice of Interest filed by Allan Birch was a wrongful lien; (2) the court had subject matter jurisdiction to appoint Defendant Bernard J. Myers (Myers) as the personal representative of the estate of his deceased wife, Eva Myers; (3) Myers was competent to serve as personal representative; and (4) the proceeds from the sale of Eva Myers's premarital home (the Blackhawk property) belonged to the Bernard J. Myers and Eva L. Myers Revocable Living Trust (the trust). We affirm in part and reverse in part.

¶ 2 The Birches first argue that the Notice of Interest filed by Allan Birch was not a wrongful lien. Whether a notice of interest is a wrongful lien "presents a question of law which we review for correctness, giving no deference to the trial court's legal conclusions." *Russell v. Thomas*, 2000 UT App 82, ¶ 8, 999 P.2d 1244.

"Wrongful lien" means any document that purports to create a lien, notice of interest, or encumbrance on an owner's interest in certain real property and at the time it is recorded or filed is not:

(a) expressly authorized by this chapter or another state or federal statute;

(b) authorized by or contained in an order or judgment of a court of competent jurisdiction in the state; or

(c) signed by or authorized pursuant to a document signed by the owner of the real property.

Utah Code Ann. § 38–9–1(6) (Supp.2008). The Birches rely on the Trust Agreement, which was signed by both Myers and Eva Myers, as authorizing the filing of the Notice of Interest. The Trust Agreement provides that after the death of Myers, Eva Myers's children, the Birches, will equally share the Blackhawk property. Because the Trust Agreement also provides that the trust principal may be invaded under certain circumstances during Myers's lifetime, the Birches' interests are subject to total divestment. Nonetheless, the Birches each currently have a future interest in the Blackhawk property. *See generally Black's Law Dictionary* 685 (7th ed. 1999) (" '[T]he [future] interest is an existing interest from the time of its creation, and is looked upon as a part of the total ownership of the land or other thing [that] is its subject matter. In that sense, future interest is somewhat misleading, and it is applied only to indicate that the possession or enjoyment of the subject matter is to take place in the future.' " (first and third alterations in original) (quoting Lewis M. Simes & Allan F. Smith, *The Law of Future Interests*

§ 1, at 2–3 (2d ed.1956))). The Utah Code specifically provides that "[a]ny person claiming an interest in land may preserve and keep effective such interest by filing [a notice of interest]," Utah Code Ann. § 57–9–4(1) (2000), and we do not see that this or any other section limits the filing of notices to protect only certain categories or quanta of interests. *See generally Black's Law Dictionary* 685 (7th ed. 1999) (" 'To own a future interest *now* means not only to be entitled now to judicial protection of one's possible future possession, but also (in most cases) to be able to make transfers now of that right of possible future possession.' " (quoting Thomas F. Bergin & Paul G. Haskell, *Preface to Estates in Land and Future Interests* 42, 56 (2d ed.1984))). Thus, because Allan Birch had an interest in the property, he was authorized by both the Trust Agreement and state statute to file the Notice of Interest.[1] *See generally* Utah Code Ann. § 38–9–1(6)(a) (excluding liens expressly authorized by state law from the definition of a wrongful lien). The Notice of Interest was therefore not a wrongful lien, and the trial court erred in this regard. Accordingly, we reverse both the trial court's determination on this issue and the accompanying award of attorney fees.[2]

¶ 3 The Birches next argue that the trial court did not have subject matter jurisdiction to address the petition for appointment of a personal representative because there were no assets to be probated. But the Birches cite to no authority supporting their claim that the apparent absence of assets to be probated divests the trial court of subject matter jurisdiction to appoint a per-

---

1. Myers argues that this result is contrary to the public policies behind both having a trustee and the wrongful lien provisions of the Utah Code. But we choose not to address the public policy argument because Myers neither elaborates on any specific public policies nor points to statutes from which we may deduce them. *See Rothstein v. Snowbird Corp.*, 2007 UT 96, ¶ 10, 175 P.3d 560 (" '[T]he theory of public policy embodies a doctrine of vague and variable quality, and, unless deducible in the given circumstances from constitutional or statutory provisions, should be accepted as a basis for judicial determinations, if at all, only with the utmost circumspection.' "

(quoting *Berube v. Fashion Ctr., Ltd.*, 771 P.2d 1033, 1043 (Utah 1989))). We do, however, note that a trustee in Myers's situation could pursue other avenues of relief, including seeking injunctive relief, and such a trustee is not left without recourse to contest a notice of interest.

2. As a result of our ruling, we need not reach the Birches' additional arguments regarding a recent statutory amendment and the various alleged deficiencies in the execution of the petition to nullify. Nor need we reach Myers's argument regarding attorney fees and statutory damages for a wrongful lien.

sonal representative. This argument also appears inconsistent with the legislature's broad grant of subject matter jurisdiction in this area, *see* Utah Code Ann. § 75–1–302(1) (1993) ("To the full extent permitted by the Constitution of Utah, the court has jurisdiction over all subject matter relating to: (a) estates of decedents, including construction of wills and determination of heirs and successors of decedents, and estates of protected persons; (b) protection of minors and incapacitated persons; and (c) trusts."). Moreover, the Birches admit that Eva Myers owned certain separate assets at the time of her death; indeed, one of the issues the Birches raise on appeal is that Myers should be required to repay funds he withdrew from Eva Myers's separate accounts after her death.[3] Thus, we see no jurisdictional error in the trial court's action to appoint a personal representative for the estate of Eva Myers.

■ ¶ 4 The Birches additionally assert that Myers is not competent to serve as personal representative, arguing that "[t]he evidence preponderates in favor of a ruling that he is incompetent." Such an argument, however, is not appropriate to raise before an appellate court.

"The appellate court is entrusted with ensuring legal accuracy and uniformity and should defer to the trial court on factual matters." It is inappropriate for an appellate court to disregard the trial court's findings of fact and to assume the role of weighing evidence and making its own findings of fact.

*Bailey v. Bayles*, 2002 UT 58, ¶ 19, 52 P.3d 1158 (citations omitted) (quoting *Willey v.*

*Willey*, 951 P.2d 226, 230–31 (Utah 1997)). To the extent that the Birches' argument may be construed as contending that there was insufficient evidence to support the trial court's finding of competence, the testimony of Myers's physician, who actually performed a competency evaluation of Myers and who had seen Myers several times a year for nearly a decade, is legally sufficient to support the factual finding of competence.[4] *See generally Chen v. Stewart*, 2004 UT 82, ¶ 76, 100 P.3d 1177 (stating that a challenge to the sufficiency of evidence requires that the appellant "demonstrate that the evidence is legally insufficient to support the finding even when viewing it in a light most favorable to the court below" (internal quotation marks omitted)).

■ ¶ 5 As part of their competency argument, the Birches claim that the trial court erred by preventing two of their witnesses from rendering an opinion on Myers's competence to serve as personal representative. " 'A [district] court has broad discretion to admit or exclude evidence and its determination typically will only be disturbed if it constitutes an abuse of discretion.' " *Chen v. Stewart*, 2005 UT 68, ¶ 27, 123 P.3d 416 (alteration in original) (quoting *State v. Whittle*, 1999 UT 96, ¶ 20, 989 P.2d 52). We see no abuse of discretion here. The Birches' witnesses were allowed to testify as to all their observations resulting from their interactions with Myers during their hospice care of Eva Myers. They were prevented from testifying as to their ultimate conclusions that Myers was incompetent only because there was not an adequate foundation to

---

3. This issue, however, was not raised below in a way sufficient to preserve the same for appeal, and we therefore do not address it. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (" '[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue.' ... For a trial court to be afforded an opportunity to correct the error '(1) the issue must be raised in a timely fashion[,] (2) the issue must be specifically raised[,] and (3) the challenging party must introduce supporting evidence or relevant legal authority.' " (alterations in original) (quoting *Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶ 14, 48 P.3d 968)).

4. Furthermore, an argument against the sufficiency of the evidence would place upon the Birches the duty to marshal the facts in support of the competency finding, a duty which they do not satisfactorily fulfill. *See generally Chen v. Stewart*, 2004 UT 82, ¶ 78, 100 P.3d 1177 ("The process of marshaling is ... fundamentally different from that of presenting the evidence at trial. The challenging party must temporarily remove its own prejudices and fully embrace the adversary's position; he or she must play the devil's advocate. In so doing, appellants must present the evidence in a light most favorable to the trial court and not attempt to construe the evidence in a light favorable to their case." (citations and internal quotation marks omitted)).

reach such conclusions. Specifically, the trial court reasoned that the conclusions that Myers suffered from dementia and could not take care of himself did not have sufficient factual foundation because the health care workers were around Myers only for short periods of time during the day while tending to his wife, and Myers may very well have done self-care tasks at other times outside their presence. We therefore affirm the trial court's limitation of testimony and ultimate finding that Myers is competent to serve as personal representative.

¶ 6 Finally, the Birches argue that the trial court erred in "annulling" a stipulation of the parties relating to the sale of the Blackhawk property. This argument is not well taken. Although there was no formal stipulation between the parties, the parties essentially agreed at a pretrial motion hearing that the Blackhawk property should be sold. But it is clear from the discussion surrounding the agreement that the parties were simply agreeing to sell the property and keep the proceeds in a certain account for the time being, not that this placement in the account was an ultimate determination as to the disposition of the proceeds. The trial court initially asked,

> Is there an agreement between the parties or can an agreement between the parties be reached with respect to what to do with the house *and then we just adjudicate what to do with the proceeds* if we go ahead and let the sale go forward with respect to third parties?

(Emphasis added.) The trial court explained its rationale behind an agreement to sell the property: "I think it's in your both long-term best interest to have some asset that's liquid versus a house that, you know, is not generating and actually may be an expense...." After the parties verbalized their agreement to a sale of the Blackhawk property, the trial court further clarified,

> Let's get at least an asset converted to some liquid proceeds, and then it's going to be a lot easier to handle and deal with from there.... So are we at least in agreement on that much that we can go ahead and liquidate the house, subject to agreement on both sides?

Thus, there was no indication that the parties' agreement to sell the Blackhawk property and put the proceeds in a certain type of bank account was a final determination as to ownership of the Blackhawk property or the proceeds from its sale.

¶ 7 Nor do we see that the Birches were in any way required to give up their claims in their civil suit as a result of the agreement to sell the Blackhawk property. Indeed, at the hearing where the agreement to sell was reached, the trial court also addressed a pending motion filed by Myers and made it clear that the parties may, notwithstanding the sale, still have various claims that they would be allowed to bring before the court:

> I'm going to deny, at least at this period of time, the motion for partial summary judgment with respect to interpretation of the trust, but without prejudice because the parties have agreed to go ahead and sell the [Blackhawk property]. We can leave open the issue as to the validity and/or the interpretation of the trust if that remains an issue after counsel has had an opportunity to look at it and/or if there is a need to revisit that issue in the future for some future action that may be needed or required....
>
> ... That leaves both of you the flexibility, still, after you have had an opportunity to look at this to analyze to see how the agreement to sell the property may impact your respective positions. Okay? You've got what you needed because you were able to sell and liquidate the property; they're in agreement that that's to their benefit as well. Now, if that still reserves them some sort of claim or issue that they want to assert, then we can deal and handle that down the road.

Thereafter, Myers renewed his motion for summary judgment, asking that the proceeds from the sale of the Blackhawk property be placed in the trust and administered according to the terms of the trust. The Birches responded to the summary judgment motion, arguing that the proceeds should remain intact in the type of joint account specified at the time of the agreement to sell the property, and that those proceeds should be delivered to the Birches when Myers dies. After

trial on the factual issues in the case, the trial court granted summary judgment in favor of Myers, determining that the proceeds should be placed in the trust.[5] The trial court gave the reasons for the altered ruling from the bench, stating that because it determined that there was a trust in place, that the Blackhawk property was properly transferred to the trust, and that Myers was competent to serve as trustee, it was appropriate to grant the motion to place the proceeds from the Blackhawk property into the trust. We see no error in such analysis, and we affirm the trial court's determination that the proceeds from the sale of the Blackhawk property are to be placed in and administered according to the terms of the trust.

¶ 8 Affirmed in part and reversed in part.[6]

¶ 9 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge and CAROLYN B. McHUGH, Judge.

---

5. The Birches make no specific argument regarding any due process rights owed them before a decision was made on Myers's summary judgment motion. The Birches do argue that there "was no time to deal with" the motion, which was filed only two weeks before trial. We note, however, that the Birches responded to the summary judgment motion and that they also filed a motion for summary judgment just prior to trial—only four days before, to be exact—asking that the trial court deny Myers the right to sell the Blackhawk property.

6. Considering the disposition on appeal, it goes without saying that we deny Myers's request for double costs and reasonable attorney fees based on a frivolous appeal, *see generally* Utah R.App. P. 33, as well as his request for attorney fees as a party that received attorney fees below and prevailed on appeal, *see generally Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998).