*This opinion is subject to revision before
publication in the Pacific Reporter*

**2016 UT 53**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

In the Matter of the Estate of RUFUS C. WILLEY[1]
_____

DON S. MCBROOM,
*Appellant,*

*v.*

SHAUNA CHILD SCHMUNK, et al.,[2]
*Appellees.*

No. 20150771
Filed November 22, 2016

On Direct Appeal

Second District, Farmington
The Honorable Thomas L. Kay
No. 143700260

Attorneys:

Mark F. James, Mitchell A. Stephens, G. Stephen Long,
Nicole A. Westbrook, Salt Lake City, for appellant

Alan L. Sullivan, Jared C. Fields, Salt Lake City, for appellees
Shauna Child Schmunk, Nancy Child Evensen, David Child,
William H. Child, Sheldon Child, Patricia Child, William Steven Child,
Susan Child Markham, Tamara Child Petersen,
Karen Child Ogden, and Michael Child

---

[1] This case was consolidated below with In the Matter of the Estate and Guardianship of Jacqui Irene Willey, Don S. McBroom, Dirk E. McBroom, Shauna D. Child, Nancy Ann Child, and David R. Child.

[2] The other appellees in this case are Nancy Child Evensen, David Child, William H. Child, Sheldon Child, Patricia Child, William Steven Child, Susan Child Markham, Tamara Child Petersen, Karen Child Ogden, Michael Child, and KeyBank, N.A.

In re Estate of R. C. WILLEY

Opinion of the Court

R. Stephen Marshall, Steven M. McCardell, Salt Lake City,
for appellee KeyBank, N.A.

───────────────

JUSTICE HIMONAS authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE PEARCE and JUDGE MORTENSEN joined.

Having been recused, JUSTICE DURHAM does not participate;
COURT OF APPEALS JUDGE DAVID N. MORTENSEN sat.

───────────────

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶ 1     Don McBroom, grandson of Rufus Call Willey, founder of the R.C. Willey business enterprise, brought a motion under rule 60(b) of the Utah Rules of Civil Procedure asking the Second District Court to set aside two orders relating to Mr. McBroom's interests in the business. The court denied the motion, and this appeal followed.

¶ 2     We affirm. First, properly construed, Mr. McBroom's rule 60(b) motion sought relief under paragraphs (3) and (4), not (6).[3] Second, since Mr. McBroom filed his motion some forty years after the Second District Court entered its orders, his claims under paragraph (b)(3) are profoundly untimely. And third, Mr. McBroom's claims under paragraph (b)(4) fail on their merits.

## BACKGROUND

¶ 3     In *McBroom v. Child*, 2016 UT 38, __ P.3d __, we discuss the relevant factual history regarding Mr. McBroom's claims at length. In this opinion, we recite only the relevant procedural history.

¶ 4     Mr. McBroom filed a petition on July 10, 2014, with the Second District Court to review his "Rule 60(b) Motion for Relief from Final Judgment and Motion for Relief Based on Fraud on the Court," which sought to set aside the Second District Court's 1973 order (1973 Order) approving a stock purchase agreement (1973 Agreement) and

───────────────

[3] Rule 60 was amended effective May 1, 2016, after the principal briefs in this matter had been filed. Because the pertinent amendments are organizational and stylistic, we cite to the current version of the rule.

the Second District Court's 1975 order (1975 Order) approving the sale of Mr. McBroom's stock in R.C. Willey & Son. Shortly thereafter, members of the Child family—many of whom are relatives of Rufus Call Willey—filed a motion to intervene in the proceedings under rule 24 of the Utah Rules of Civil Procedure. And on September 22, 2014, KeyBank filed a motion, which the district court granted, asking the court to "authorize its [c]lerk to acknowledge KeyBank as a party and to accept filings by KeyBank in this matter." In its final order, dated August 26, 2015, the district court granted the Child family's motion to intervene in part, denied Mr. McBroom's rule 60(b) motion, and denied Mr. McBroom's motion for relief based on fraud on the court.[4] We have jurisdiction over Mr. McBroom's appeal of this decision under Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶ 5 "[A] district court has broad discretion in ruling on a motion to set aside an order or judgment under rule 60(b), and '[t]hus, we review a district court's denial of a 60(b) motion under an abuse of discretion standard.'" *Metro. Water Dist. of Salt Lake & Sandy v. Sorf*, 2013 UT 27, ¶ 12, 304 P.3d 824 (second alteration in original) (citation omitted).

## ANALYSIS

¶ 6 The district court did not abuse its discretion in denying Mr. McBroom's rule 60(b) motion. We first classify Mr. McBroom's claims for relief under the proper paragraphs of rule 60. We conclude that Mr. McBroom did not properly file a claim for relief under paragraph (b)(6), and instead his claims fall under paragraphs (b)(3) and (4). Next we conclude that because Mr. McBroom did not file his motion under paragraph (b)(3) within ninety days, as prescribed by rule 60(c), his claims based on allegations of fraud on the court are untimely and we do not consider them. We then proceed to analyze Mr. McBroom's claims under paragraph (b)(4). And we hold that all of

---

[4] As we explain below, and as the district court correctly observed, Mr. McBroom's motion for relief based on fraud on the court is not an independent action and "must be evaluated under [r]ule 60(b)(3)." Therefore, throughout this opinion, we treat Mr. McBroom's fraud motion as having been brought pursuant to rule 60(b)(3).

his paragraph (b)(4) claims are meritless. As a result, we affirm the district court's denial of Mr. McBroom's rule 60(b) motion.

## I. THE PROPER CLASSIFICATION OF MR. MCBROOM'S RULE 60(b) MOTION FOR RELIEF

¶ 7    Rule 60(b) allows a court, "upon just terms," to "relieve a party or its legal representative from a judgment, order, or proceeding" for reasons laid out in paragraphs (b)(1) through (6).[5] The rule further provides that "[a] motion under paragraph (b) must be filed within a reasonable time." UTAH R. CIV. P. 60(c).  Moreover, a motion under paragraph (b)(1), (2), or (3) cannot be filed more than ninety days after entry of the judgment or order. *Id.* Because of these differing times, we must determine under what paragraphs Mr. McBroom's reasons for relief fall. Mr. McBroom claims to have filed for relief under paragraphs (b)(4) and (6). We conclude, however, that Mr. McBroom did not appropriately file for relief under paragraph (b)(6), and instead his claims fall under paragraphs (b)(3) and (4).

¶ 8    In his filings with the Second District Court, Mr. McBroom claimed to seek relief under paragraphs (b)(4) and (6). Mr. McBroom made several arguments claiming that the orders from which he is seeking relief are void. By the plain language of rule 60, a party seeking relief from a judgment or order on the basis that "the judgment is void" must press his or her claim under paragraph (b)(4). UTAH R. CIV. P. 60(b)(4). The only other basis upon which Mr. McBroom sought relief was fraud on the court. But Mr. McBroom cannot seek relief under rule 60(b)(6) based on an allegation of fraud on the court. Instead, a motion seeking relief from a judgment based upon an allegation of fraud on the court necessarily falls under paragraph (b)(3), not paragraph (b)(6).

¶ 9    Under the plain language of rule 60, a party seeking to be relieved from a judgment or order based upon an allegation of fraud on the court must do so under paragraph (b)(3). UTAH R. CIV. P. 60(b)

---

[5] The reasons are as follows: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial . . . ; (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation or other misconduct of an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged . . . ; or (6) any other reason that justifies relief." UTAH R. CIV. P. 60(b).

(permitting a court to relieve a party from a judgment when there is "fraud . . . , misrepresentation or other misconduct of an opposing party"). Motions under paragraph (b)(6), on the other hand, must be based on a reason other than those listed in paragraphs (b)(1) through (5). *Id.* (permitting a court to relieve a party from a judgment for "any other reason that justifies relief"); *see also Richins v. Delbert Chipman & Sons Co.*, 817 P.2d 382, 387 (Utah Ct. App. 1991) ("Relief under [paragraph (b)(6)] embodies three requirements: 'First[,] that the reason be one *other* than those listed in subdivisions (1) through [(5)] . . . .'"(citation omitted)). Rule 60(b)(6) is a residuary clause; a party may not rely upon it if the asserted grounds for relief fall within any other paragraph of rule 60(b). *See Laub v. S. Cent. Utah Tel. Ass'n*, 657 P.2d 1304, 1306–07 (Utah 1982). As a result, because Mr. McBroom sought relief from the Second District Court's orders based on an allegation of fraud on the court, his motion squarely falls under paragraph (b)(3), not paragraph (b)(6).

¶ 10 Therefore, having properly classified Mr. McBroom's rule 60(b) motion into the proper paragraphs, (b)(3) and (4), we proceed to determine if Mr. McBroom timely filed his motion, and if so, whether the merits of his arguments warrant reversal of the district court's judgment against him.[6]

---

[6] We note that on appeal Mr. McBroom characterizes his claims that "relief is justified because the 1973 Order and the 1975 Order irreconcilably conflict with the court's 1956 Order" and "relief is justified based upon a conflict of interest and self-dealing by the administratrix" as claims for relief under rule 60(b)(6). But, the district court disposed of these claims under rule 60(b)(4) and noted that "[t]he grounds on which Mr. McBroom bases his motion . . . are not appropriately raised under [r]ule 60(b)(6)." At the district court, Mr. McBroom's claims for relief based on these grounds sought to set aside the court orders on a theory that they made the judgments void. By the plain language of rule 60, any claims for relief based on a theory that a judgment is void fall under paragraph (b)(4), not paragraph (b)(6). UTAH R. CIV. P. 60(b)(4). As a result, we agree with the district court that these claims for relief are viewed most appropriately as rule 60(b)(4) claims and "are not appropriately raised under [r]ule 60(b)(6)." Thus, even though Mr. McBroom attempts to characterize these claims

(cont.)

## II. MR. MCBROOM'S RULE 60(b)(3) MOTION

¶ 11    We hold that Mr. McBroom failed to file his rule 60 motion under paragraph (b)(3) within ninety days as required by rule 60(c). As a result, we conclude that his rule 60 motion under paragraph (b)(3) is untimely and fails.[7]

¶ 12    Rule 60(c) requires that any motion filed under paragraph (b) "be filed within a reasonable time and for reasons in paragraph (b)(1), (2), or (3), not more than 90 days after entry of the judgment or order."

---

on appeal as claims under paragraph (b)(6), we analyze them in the context of paragraph (b)(4).

[7] Mr. McBroom makes the following claims, which fall under rule 60(b)(3): (1) "fraud on the court justifies relief from the orders obtained by fraud," (2) "the court was deceived that the 1973 Agreement was fair to [Mr.] McBroom," (3) "gross conflicts of interest deceived the court into believing [Mr.] McBroom was protected by an attorney and a guardian," (4) "the court was wrongfully led into believing an actuarial analysis ensured fairness to [Mr.] McBroom," and (5) "the only person the court heard from or saw was an attorney who fabricated evidence." We do not address the merits of any of these claims because, as stated above, Mr. McBroom failed to timely file his motion under rule 60(b)(3) as required by rule 60(c).

We also cannot address these claims on a theory that Mr. McBroom filed an independent action for relief based on fraud on the court. *See* UTAH R. CIV. P. 60(d) ("This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding to set aside a judgment for fraud upon the court."). Mr. McBroom clearly filed a motion under rule 60(b) and not an independent action for fraud on the court. And although "Mr. McBroom's moving papers argue[d] that his motion is, in this respect, an 'independent action' within the meaning of . . . [r]ule 60[d]," like the district court, we "conclude[] that it is not an independent action because it was not asserted in a separate complaint filed with the [district court] and served on the parties from whom he seeks relief." Additionally, an independent action consists of a complaint and service. *See Estate of Thompson v. Turner*, 690 P.2d 925, 926 (Idaho 1984). Mr. McBroom's motion did not comply with this requirement. Thus, Mr. McBroom's claims for relief based on fraud on the court are made under rule 60(b)(3) and do not constitute an independent action.

UTAH R. CIV. P. 60(c). The rule goes on to indicate that the "rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding or to set aside a judgment for fraud upon the court." *Id.* The language of the rule is clear; a party must file a rule 60(b) motion within a reasonable time,[8] which is within ninety days after a judgment or order is entered, if the motion is filed under paragraphs (b)(1), (2), or (3). If a party fails to file a motion under paragraphs (b)(1), (2), or (3) within ninety days, then the party must file an independent action if it wishes to be relieved of a judgment or order based upon fraud on the court.

¶ 13   In the present case, Mr. McBroom filed his rule 60(b) motion under paragraph (b)(3) in 2014, forty-one years after the Second District Court entered the 1973 Order and thirty-nine years after the court entered the 1975 Order. This is decades after the ninety-day limit the rule imposes. As a result, we hold that Mr. McBroom's rule 60(b) motion under paragraph (b)(3) did not comply with the requirements of rule 60(c) and is untimely.

### III. MR. MCBROOM'S RULE 60(b)(4) MOTION

¶ 14   We now proceed to analyze Mr. McBroom's claims for relief under rule 60(b)(4). We do not make a determination of whether Mr. McBroom's claims under rule 60(b)(4) are subject to the reasonable time limit under rule 60(c). Instead, we evaluate the merits of Mr. McBroom's claims under rule 60(b)(4) that the Second District Court's 1973 Order and 1975 Order are void.

¶ 15   Mr. McBroom makes three categories of claims that the Second District Court's orders are void. First, he argues that the Second District Court lacked subject matter jurisdiction. Second, he argues that the Second District Court lacked personal jurisdiction over him. Finally, he argues that conflicts of interest rendered the Second District Court's orders void. We hold that all of Mr. McBroom's claims for relief on these bases fail on their merits.

---

[8] Despite the language of the rule, our case law has held that some motions under rule 60(b)(4) are not subject to a reasonable time limitation. *See, e.g., Garcia v. Garcia*, 712 P.2d 288, 290–91 (Utah 1986). We discuss the imposition of a reasonable time limit on motions made under rule 60(b)(4) *infra* ¶¶ 17–18.

*A. Timeliness of Mr. McBroom's Rule 60(b)(4) Claims*

¶ 16    It is an unsettled question in Utah whether all claims that judgments are void under rule 60(b)(4) are subject to the reasonable time limit imposed by rule 60(c). Mr. McBroom argues that the district "court erroneously interpreted [r]ule 60(b)(4) and [Mr.] McBroom's jurisdictional arguments as being limited by [Mr.] McBroom's 'failure' to 'seek relief "within a reasonable time."'" He couches this claim in his assertion that "[s]ubject matter jurisdiction may not be waived by either party and may be raised at any time . . . . Therefore, any challenge to the court's subject matter jurisdiction is timely." We conclude that Mr. McBroom's claims regarding timeliness under rule 60(b)(4) pertain to an unsettled area of the law in Utah. As a result, we decline to make a ruling on this point because the parties do not adequately brief this issue, because other jurisdictions are split on this issue, and because resolution of this issue is not necessary to the disposition of this case.

¶ 17    Although the language of rule 60(c) states that all motions under paragraph (b) must be filed within a reasonable time, this court has held that "where the judgment is void because of a fatally defective service of process, the time limitations of [r]ule 60(b) have no application." *Garcia v. Garcia*, 712 P.2d 288, 290 (Utah 1986). While *Garcia* and a prior case, *Woody v. Rhodes*, 461 P.2d 465, 466 (Utah 1969), limited their holdings to motions based on a "fatally defective service of process," we recognize that *Garcia* continued to state, "there is no time limit on an attack on a judgment as void." 712 P.2d at 291 (citation omitted). But the language in *Garcia* advancing the notion that "the requirement that the motion be made within a 'reasonable time,' . . . cannot be enforced with regard to [a rule 60(b)(4)] motion" is dicta given the clear holding of the case. *Id.* (citation omitted). *Garcia* held only that "where the judgment is void *because* of a fatally defective service of process, the time limitations of [r]ule 60(b) have no application." *Id.* at 290 (emphasis added). Therefore, apart from the dicta in *Garcia*, this court has not extended the exemption from the reasonable time requirement in rule 60(c) to claims other than those based on "fatally defective service of process."[9] *Id.*

---

[9] Mr. McBroom's reliance on *Murray Place v. Varela*, 2013 UT App 19, ¶ 3, 297 P.3d 642, is unavailing. The language he cites from *Murray Place* that "a motion under rule 60(b)(4) may 'succeed on the basis of a mere showing that the judgment was void because of some defect in

(cont.)

¶ 18    There is a split among other jurisdictions on whether motions made under rule 60(b)(4) are subject to a reasonable time limit. Some courts have held that motions made under rule 60(b)(4) are exempt from the reasonable time limit found in rule 60, while others have held that motions under rule 60(b)(4) are subject to a reasonable time limit. *Compare McGrew v. McGrew*, 82 P.3d 833, 841 (Idaho 2003) ("To obtain relief from a void judgment under Rule 60(b)(4) of the Idaho Rules of Civil Procedure, a party must bring a motion for such relief within a reasonable time."), *and Tudor's Biscuit World of Am. v. Critchley*, 729 S.E.2d 231, 238 (W. Va. 2012) ("A movant seeking relief under Rule 60(b)(4) of the West Virginia Rules of Civil Procedure must show that the judgment sought to be vacated is void and that the motion to vacate the judgment was filed within a reasonable period of time." (citation omitted)), *with Carter v. Fenner*, 136 F.3d 1000, 1006 (5th Cir. 1998) ("Motions brought pursuant to Rule 60(b)(4), however, constitute such exceptional circumstances as to relieve litigants from the normal standards of timeliness associated with the rule."), *Ex parte Full Circle Distribution, L.L.C.*, 883 So. 2d 638, 642 (Ala. 2003) (holding "that the reasonable-time limitation is not applicable to actions seeking to set aside a void judgment pursuant to Rule 60(b)(4)"), *and Reynaud v. Koszela*, 473 A.2d 281, 285 (R.I. 1984) ("Thus, Rule 60(b)'s requirement of reasonable time . . . is not applicable to motions based upon Rule 60(b)(4) . . . ."). Therefore, whether we should hold motions under rule

---

the court's authority over the case or the parties,'" comes from our decision in *Judson v. Wheeler RV Las Vegas, L.L.C.*, 2012 UT 6, ¶ 16, 270 P.3d 456. In *Judson*, we were not addressing the question of whether motions made under rule 60(b)(4) were subject to a reasonable time requirement. Instead, we held that motions under rule 60(b)(4) did not have to "assert[ ] . . . a separate meritorious defense," even though "[t]he assertion of a separate meritorious defense is generally . . . required in a successful 60(b) motion." *Id.* ¶ 15. Consequently, our pronouncement that "[a] motion under rule 60(b)(4) . . . could succeed on the basis of a mere showing that the judgment was void" did not, and should not be read to, proclaim that motions under rule 60(b)(4) are exempt from the reasonable time requirements of rule 60(c). *Id.* ¶ 16. As stated above, we have never fully addressed that question. Instead, the holding in *Judson* is limited to the general requirement that motions under rule 60 must assert a separate meritorious defense. *See id.* ¶ 14.

60(b)(4) subject to a reasonable time limit is not a simple question with a single answer.

¶ 19    In the present case, we determine that it is unnecessary for us to resolve whether the reasonable time limit applies to all motions made under rule 60(b)(4). The parties have not briefed this particular issue, and we are hesitant to make a determination on this point without the benefit of such briefing. In addition, the resolution of the matter is not necessary for us to resolve this case. The district court, in addition to declaring that Mr. McBroom's motions were "untimely," also determined that Mr. McBroom's claims under rule 60(b)(4) failed on their merits. In their briefs, the parties discussed at length the merits of Mr. McBroom's claims under rule 60(b)(4). Therefore, we may review the merits of Mr. McBroom's claims under rule 60(b)(4) and make a determination on the arguments' merits.

### B. Mr. McBroom's Claims That the Second District Court Lacked Subject Matter Jurisdiction

¶ 20    Mr. McBroom makes three claims that the Second District Court lacked subject matter jurisdiction to issue the 1973 Order and the 1975 Order. We reject all three of his claims and determine that the Second District Court's orders are not void because the court had subject matter jurisdiction.

1. Lack of Notice to Mr. McBroom, His Failure to Attend the Second District Court's Proceedings in Person, and His Waiver of Notice

¶ 21    Mr. McBroom first claims that "the judgment is void because the [district] court lacked subject matter jurisdiction when the minor child [Mr.] McBroom was not notified of the hearings and did not attend court in person." He cites Utah Code section 75-5-405(1) for his proposition that "a minor may not waive notice pursuant to Utah law without being physically present before the court," and argues that because "it is undisputed that [Mr.] McBroom was never present before the court," the waiver of notice he signed for the guardianship proceedings was invalid. He then claims that "only a parent who has 'no conflict of interest' may waive notice for a minor child," and because Betty McBroom, Mr. McBroom's mother, had a conflict of interest with her son, the waiver of notice that both she and Mr. McBroom signed is invalid. In addition, Mr. McBroom claims that the waiver of notice he signed was "expressly limited" to the petition for and issuance of the guardianship letters to Commercial Security Bank and did not waive notice for the proceedings resulting in the 1973 Order or the proceedings resulting in the 1975 Order.

¶ 22  We first conclude that Mr. McBroom's reliance on Utah Code section 75-5-405(1) is misplaced. That section is not a provision from the 1953 Utah Code as Mr. McBroom asserts in his brief. Instead, section 75-5-405(1) was passed in 1975 and did not take effect until July 1, 1977. UTAH CODE § 75-8-101. This is well after the Second District Court issued the 1973 Order and the 1975 Order. Nor does the section have retroactive effect. *Id.* ("An act done before the effective date in any proceeding and any accrued right is not impaired by this code."). Regardless, by its terms, section 75-5-405(1) applies only to the appointment of a conservator or other protective order. *Id.* So, even if the statute had been effective as of the date of the proceedings involving Mr. McBroom, the statute would not have applied. As a result, Mr. McBroom's claim that he needed to be physically present before the court in order to waive notice about the proceedings resulting in the 1973 Order and the proceedings resulting in the 1975 Order is incorrect.

¶ 23  We also conclude that Mr. McBroom's reliance on Utah Code section 75-1-402 for the claim that Mr. McBroom's mother could not waive notice on Mr. McBroom's behalf because Mr. McBroom's mother had a conflict of interest is unavailing. Once again, contrary to Mr. McBroom's citation to the 1953 Utah Code, section 75-1-402 was passed in 1975, did not take effect until July 1, 1977, and does not apply retroactively. *Id.* § 75-8-101. So, even assuming Mr. McBroom's mother did have a conflict of interest with Mr. McBroom, this statute did not apply to the waiver of notice that Mr. McBroom and his mother signed in 1973. Consequently, because both Mr. McBroom and his mother assented to and signed the waiver of notice in 1973, and because they were permitted to do so under the existing probate code of the time, Mr. McBroom's claim that the waiver of notice is invalid based on this point fails.

¶ 24  Mr. McBroom also contends that the waiver of notice he signed was limited to the petition for the letters of guardianship and to the issuance of those letters of guardianship to Commercial Security Bank. Therefore, he claims to have never waived notice to the proceedings resulting in the 1973 Order nor to the proceedings resulting in the 1975 Order. However, even accepting that the waiver of notice covered only the petition for and issuance of the letters of guardianship to Commercial Security Bank, Mr. McBroom fails to cite any statutory authority requiring notice to be given to him after the appointment of his guardian. As a result, we conclude that there were

no statutory requirements at the time requiring that Mr. McBroom personally be given notice of the proceedings resulting in the 1973 Order or the proceedings resulting in the 1975 Order.

¶ 25    Under the relevant statutes at the time, sections 75-13-12 and 75-14-22, there were no requirements that Mr. McBroom personally receive notice of the proceedings resulting in the 1973 Order or the 1975 Order. *Id.* Under section 75-13-12, the court was required to give notice only "as it deems reasonable . . . to any person having the care of the minor, and to such relatives of the minor residing in the county as the court may deem proper." *Id.* Under this provision, the district court was not required to give notice to Mr. McBroom at all, and it was required to give notice to his guardian or relatives only as it "deem[ed] reasonable." *Id.* Furthermore, section 75-14-22 stated that "personal service upon the guardian of any process, notice[,] or order of the court concerning . . . any guardianship matter in which the ward is interested is equivalent to service upon the ward." *Id.* Therefore, any notice that Commercial Security Bank received about the 1973 and the 1975 proceedings is deemed the "equivalent to service upon [Mr. McBroom]." *Id.* Consequently, there was no statutory requirement that Mr. McBroom personally receive notice regarding the proceedings. As long as Commercial Security Bank received notice about the proceedings, that was the equivalent to Mr. McBroom's receiving notice.[10] And, in fact, Commercial Security Bank received notice in 1973 and 1975 about the proceedings, and public notice was posted in Utah in 1973 and in 1975 for the proceedings. Thus, Mr. McBroom's contention that lack of notice rendered the Second District Court's orders void fails.

2.    Mr. McBroom's Claim About Having Reached the Age of Majority

¶ 26    For the second time before this court, Mr. McBroom makes the argument that "he was no longer a minor when the [c]ourt issued [the 1975 Order] approving the sale of [Mr.] McBroom's [shares] in [R.C. Willey & Son]." Therefore, he argues, the Second District Court

---

[10] Mr. McBroom argues that a lack of notice violated his constitutional due process rights. However, this argument is not properly fleshed out and is not well taken. Mr. McBroom points to no authority for why the statutory provision in place at the time allowing notice to be given to his guardian violated his due process rights. In any case, Mr. McBroom waived any further notice. *Supra* ¶¶ 21-24.

lacked subject matter jurisdiction over the proceedings when it approved the sale of his shares. We previously dealt with this argument in Mr. McBroom's appeal in *McBroom v. Child*, 2016 UT 38, __ P.3d __. Since Mr. McBroom's claims are the same in regard to this point, we reach the same conclusion that this argument is wholly without merit.

¶ 27   Mr. McBroom makes the argument that the Second District Court lacked jurisdiction to approve the sale of his shares in the 1975 Order because he had obtained the age of majority. He cites *Stanton v. Stanton*, 429 U.S. 501, 505 (1977), for the proposition that "both before and after the 1975 amendment to [the Utah majority statute], the statutory age of majority for both males and females in Utah was 18, not 21." Mr. McBroom fails to acknowledge that this quote is actually from Justice Stevens' dissenting opinion in *Stanton*, and is not a statement of the law regarding the age of majority in Utah. *See id.* Instead, at the time of the Second District Court's approval of the sale of Mr. McBroom's shares, the age of majority for a male in Utah was twenty-one years. *See Stanton v. Stanton*, 421 U.S. 7, 9 (1975) ("[T]he period of minority for males extends to age 21 and for females to age 18[.]"). On March 24, 1975, the Utah Legislature amended the statute and established a uniform age of majority of eighteen years. Law of March 24, 1975, ch. 39, 1975 Utah Laws 121. The legislation went into effect on May 13, 1975. *See Wiker v. Wiker*, 600 P.2d 514, 515 (Utah 1978). Mr. McBroom turned eighteen on August 8, 1974, and KeyBank petitioned to sell his shares in February 1975. On both accounts, the amendment to the age of majority was not yet in effect; thus, Mr. McBroom was still a minor at the relevant time and the Second District Court had jurisdiction over the proceedings. *Cf. Memmott v. Bosh*, 520 P.2d 1342, 1343 (Utah 1974) ("[W]hen a minor attains majority status the guardian has no further rights in the estate and only has a duty to account to or to make settlement with his former wards."). As a result, Mr. McBroom was a minor in February 1975 and the Second District Court had subject matter jurisdiction to issue the 1975 Order. Therefore, that judgment is not void and may not be set aside under rule 60(b)(4).

3. The 1973 and the 1975 Orders' Alleged Conflicts with the 1956 Probate Decree

¶ 28   Mr. McBroom makes one final argument that the Second District Court lacked subject matter jurisdiction to issue the 1973 Order and the 1975 Order. As mentioned above, although Mr. McBroom attempts to characterize this claim as falling under rule 60(b)(6), we

conclude that it is more appropriately viewed as falling under paragraph (b)(4) because he argued that the conflicts render the judgment void. *See supra* ¶ 7. As a result, we address it here and conclude that this argument is without merit.

¶ 29   Mr. McBroom argues that "[b]ecause no court ever set aside or modified the probate decree [regarding Rufus Call Willey's estate (1956 Probate Decree)], it was a final order that could not be disturbed or collaterally attacked in 1973." Consequently, he argues, "the court entered the 1973 [O]rder that directly conflicted with the prior court order." In addition, Mr. McBroom questions the "legal effect" of the sale of his shares in R.C. Willey & Son because "conveyance of a contingent remainder interest is highly unusual, and it is an open legal question whether the sale of a contingent remainder before the interest becomes vested is even valid." Mr. McBroom also claims that "the holder of a remainder interest must file an express disclaimer with the probate court to effectively renounce or disclaim his interest." Therefore, since he did not file any such disclaimer, he never effectively renounced or disclaimed his interest in R.C. Willey & Son. Finally, Mr. McBroom argues that he never sold his shares in R.C. Willey & Son because he "never knew of his interest [in the company] prior to or after the 1973 Agreement took effect," and he argues that "there was never performance under the 1973 Agreement" because he "never was even paid the $5,000" he was owed under the 1973 Agreement. For the reasons discussed below, we conclude all of these claims by Mr. McBroom lack merit.

¶ 30   First, the Second District Court's 1973 Order approving the 1973 Agreement did not "disturb[ ] or collaterally attack[ ]" the 1956 Probate Decree. Instead, the 1973 Agreement operated as a sale of future interests for Mr. McBroom. And despite Mr. McBroom's claims to the contrary, it does not appear that "it is an open legal question whether the sale of a contingent remainder before the interest becomes vested is even valid"; there is nothing in Utah case law that prevented Mr. McBroom from selling his future interest. *See In re Estate of Myers*, 2009 UT App 180, ¶ 2, 214 P.3d 115 ("To own a future interest *now* means not only to be entitled now to judicial protection of one's possible future possession, but also (in most cases) to be able to make transfers now of that right of possible future possession.") (quoting BLACK'S LAW DICTIONARY 685 (7th ed. 1999)); *see also Weight v. Bailey*, 147 P. 899, 900–01 (Utah 1915) (recognizing the validity of a sale of a remainder interest while the life estate holder was still alive). As a result, because Mr. McBroom was not prevented from selling his

contingent remainder interest in Mr. Willey's estate, and because such a sale does not "disturb[ ] or collaterally attack[ ]" the 1956 Probate Decree, the 1973 Order did not conflict with the 1956 Probate Decree in this manner.

¶ 31    Furthermore, the 1973 Order approving the 1973 Agreement was not a renunciation or disclaimer of Mr. McBroom's inheritance interest. Instead, the 1973 Agreement was a sale of Mr. McBroom's future interests that he inherited under Mr. Willey's will. Consequently, he was not required to file an express disclaimer with the probate court to sell, rather than renounce or disclaim, his shares to R.C. Willey & Son under the 1973 Agreement.

¶ 32    Finally, Mr. McBroom did sell his shares to R.C. Willey & Son in the 1973 Agreement despite his claims that he did not know about his interest or that he was never paid the $5,000 owed him under the Agreement. The 1973 Agreement, which Mr. McBroom's guardian signed, was an agreement to sell his shares in R.C. Willey & Son. Mr. McBroom petitioned the court for the appointment of Commercial Security Bank as his guardian to represent him in the transaction. And the Second District Court approved of the 1973 Agreement as it related to Mr. McBroom in the 1973 Order. There can be no doubt that he, through representation of his guardian, agreed to sell his shares in R.C. Willey & Son in the 1973 Agreement. Mr. McBroom fails to explain what legal effect his alleged ignorance of his interest in R.C. Willey & Son would have had on the validity of the orders entered by the Second District Court approving the sale of his contingent interest in the company. And we do not see how his alleged ignorance would render the Second District Court's orders void.

¶ 33    He further asserts that because he was not paid the $5,000 the sale of his shares is "factually implausible." However, this argument does not support a conclusion that the Second District Court's orders are void. At most, if Mr. McBroom truly was not paid the $5,000 owed him under the 1973 Agreement, his remedy would lie with R.C. Willey & Son, which is not party to this action. The claim that R.C. Willey & Son did not perform under the 1973 Agreement is not at issue in this rule 60(b) motion and is not properly raised to the extent Mr. McBroom claims to raise it. His rule 60(b) motion seeks to set aside the Second District Court's orders; it is not an action to recover for damages from R.C. Willey & Son. Therefore, we determine that the Second District Court's 1973 Order and 1975 Order did not conflict with the 1956 Probate Decree and thus are not rendered void.

*C. Mr. McBroom's Claim That the Second District Court*
*Lacked Personal Jurisdiction*

¶ 34   We now consider Mr. McBroom's claim that the Second District Court lacked personal jurisdiction over him, rendering the 1973 Order and the 1975 Order void. We conclude that because Mr. McBroom petitioned the court, he voluntarily submitted to the court's jurisdiction and the court properly exercised long-arm jurisdiction over Mr. McBroom's property. As a result, the Second District Court had personal jurisdiction over Mr. McBroom and his property located in Utah and the 1973 Order and the 1975 Order are not void.

¶ 35   Mr. McBroom argues that because he did not "reside within the court's jurisdictional territory" between 1973 and 1975, the Second District Court lacked jurisdiction over him. Mr. McBroom also argues that he never petitioned the court to sell his shares in R.C. Willey & Son and thus the "district court improperly acted to grant a petition for approval of a sale of [Mr.] McBroom's interests without [Mr.] McBroom's knowledge and over a person not located within the State of Utah's jurisdiction." Finally, Mr. McBroom asserts that he never held an interest in the stock of R.C. Willey & Son because the 1973 Agreement was an agreement to sell his shares. As a result, Mr. McBroom never possessed any property located in Utah and "[i]t is of no matter that the court had jurisdiction over the property of the estate of [Mr.] Willey, which was in the confines of Utah." Mr. McBroom is wrong on all counts.

¶ 36   First, Mr. McBroom and his mother petitioned the Second District Court for the appointment of Commercial Security Bank as Mr. McBroom's guardian. We agree with KeyBank that "[p]etitioners who take advantage of Utah courts by seeking the entry of orders authorized by statute should not be heard to complain that the court which granted their petition lacked personal jurisdiction to do exactly what they asked it to do." It is undisputed that Mr. McBroom and his mother asked the Second District Court to appoint Commercial Security Bank as guardian over Mr. McBroom's estate. Mr. McBroom cannot argue forty-three years after he petitioned the district court that it lacked personal jurisdiction over him. He submitted to the Second District Court's jurisdiction when he signed and filed the petition for guardianship. As a result, Mr. McBroom "transact[ed] . . . business within this state," and the Second District Court properly exercised long-arm jurisdiction over him, even though he was not residing in Utah. UTAH CODE § 78B-3-205.

¶ 37    Furthermore, it is of no matter that Mr. McBroom did not separately petition the district court for permission to sell his shares in R.C. Willey & Son. Once Commercial Security Bank was appointed as guardian over Mr. McBroom's estate, it was authorized to conduct business regarding Mr. McBroom's estate. Commercial Security Bank petitioned the district court for authority to sell Mr. McBroom's shares in R.C. Willey & Son. A separate petition from Mr. McBroom himself was not required, and Mr. McBroom does not cite any legal authority to that effect. And, as stated above, no statute in place required notice to be given to Mr. McBroom personally of those proceedings. *See supra* ¶ 24. Instead, the notice provided to his guardian, Commercial Security Bank, was deemed the equivalent of notice to Mr. McBroom. *See* UTAH CODE § 75-14-22 (1953). Consequently, the fact that Mr. McBroom never received personal notice about the proceedings resulting in the 1975 Order and the fact that he was not located in Utah did not divest the Second District Court of personal jurisdiction over Mr. McBroom's estate.

¶ 38    Finally, Mr. McBroom's claim that he never possessed any property in Utah is wrong. Under the terms of the 1973 Agreement, Mr. McBroom exchanged his contingent remainder interest in R.C. Willey & Son for a present possessory interest of five shares of stock in the company. As R.C. Willey & Son was a company incorporated in Utah, this property was located in the state of Utah. Even though Mr. McBroom agreed to sell his interests in the company in the 1973 Agreement, the sale of his shares did not take place until 1975. Consequently, his assertion that he never held an interest in the stock of R.C. Willey & Son because he subsequently sold those shares two years later is without merit. The 1973 Agreement and the 1975 sale of his shares were "transaction[s] of . . . business within this state," and, as such, the Second District Court had authority to exercise long-arm jurisdiction over them. *Id.* § 78B-3-205. Therefore, we conclude that the Second District Court did have personal jurisdiction and the judgments are not void on this basis.

### D. Mr. McBroom's Claim That the 1973 Order Is Void Because of His Grandmother's Conflict of Interest and Self-Dealing

¶ 39    The final claim we analyze is Mr. McBroom's claim that "relief is justified based upon conflict of interest and self-dealing by the administratrix" of Mr. Willey's estate, his grandmother, Helen Barber. We hold that there is no legal basis to conclude that the 1973 Order was void based on a conflict of interest from Ms. Barber. Nor is there

evidence to conclude that Ms. Barber engaged in self-dealing by entering into the terms of the 1973 Agreement that was approved by the Second District Court in the 1973 Order.

¶ 40 To support his claim that the 1973 Order is void, Mr. McBroom cites Utah Code section 75-3-712. That section states that

> [a]ny sale or encumbrance to the personal representative . . . or any corporation . . . in which he has a substantial beneficial interest, or any transaction which is affected by a substantial conflict of interest on the part of the personal representative, is voidable by any person interested in the estate.

*Id.* However, this section is not from the 1953 Utah Code as Mr. McBroom asserts. Instead, this is a current provision of the Utah Probate Code, effective in 1977. UTAH CODE § 75-8-101. Furthermore, "[a]n act done before the effective date in any proceeding and any accrued right is not impaired by [the Utah Uniform Probate Code]." *Id.* The 1973 Order was entered on October 12, 1973, well before section 75-3-712 came into effect. Therefore, this section dealing with conflicts of interest does not apply to the 1973 Order. Besides, under the plain language of section 75-3-712, a transaction affected by conflicts of interest is *voidable* rather than void, and it is therefore doubtful that a conflict of interest under this statute would meet the requirements of rule 60(b)(4). *Id.*; UTAH R. CIV. P. 60(b)(4) (allowing a judgment to be set aside on the grounds that "the judgment is void").

¶ 41 In addition, Mr. McBroom claims that Ms. Barber engaged in self-dealing by "[u]sing the 1973 Agreement . . . [to] redistribute[ ] the inheritance of the heirs to herself, to [William] Child, and to [R.C. Willey & Son] – a company in which [Ms.] Barber owned only a life estate interest." Once again, the 1973 Agreement and the 1973 Order approving it did not disturb the 1956 Probate Decree, which closed the affairs of Mr. Willey's estate. *See supra* ¶ 30. Instead, it was an agreement that exchanged vested and contingent interests inherited by the beneficiaries of Mr. Willey's will. Furthermore, the estate of Mr. Willey was probated in 1956 and Ms. Barber was no longer acting as administratrix of Mr. Willey's estate by the time the 1973 Agreement was entered. *See, e.g.*, UTAH CODE § 75-3-1003(2) ("If no proceedings involving the personal representative are pending in the court one year after the closing statement is filed, the appointment of the personal representative terminates."). Therefore, Mr. McBroom's contention that Ms. Barber was self-dealing is not borne out by the evidence of what

the 1973 Agreement was, and Ms. Barber was no longer acting as administratrix at the time the 1973 Agreement was entered. As a result, the Second District Court's 1973 Order approving of the 1973 Agreement is not rendered void by self-dealing on the part of Ms. Barber.

## CONCLUSION

¶ 42   In conclusion, we affirm the district court's denial of Mr. McBroom's rule 60(b) motion. His claims fall under rule 60 paragraphs (b)(3) and (b)(4), rather than under paragraph (b)(6). Since Mr. McBroom failed to file his claims under rule 60(b)(3) within ninety days, as required by rule 60(c), his claims under paragraph (b)(3) are untimely and we do not consider them. And although we do not determine whether motions made under rule 60(b)(4) are subject to a reasonable time limit, we conclude that Mr. McBroom's claims under rule 60(b)(4) fail on their merits. As a result, we hold that the district court did not abuse its discretion when it denied Mr. McBroom's rule 60(b) motion.

———————